IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03–12944 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 377** |

**ORDER AUTHORIZING (A) SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS SUBJECT TO HIGHER OR BETTER OFFERS, (B) APPROVING THE AMENDED AND RESTATED ASSET PURCHASE AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE, AND (D) GRANTING RELATED RELIEF**

Upon the motion, dated January 6, 2004, (the "Motion")[1] of the above-captioned debtors and debtors-in-possession (the "Debtors"), for entry of an order under sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (the "Sale Order") authorizing, among other things, (a) the sale (the "Sale") of substantially all of the Debtors' assets (including the right of the Buyer (the "Designation Rights") to designate certain Real Property (the "Subject Real Property") to be acquired by the Buyer or its designees from time to time (the date of each such acquisition, a "Subject Closing Date") during the 90-day period following the Closing) free and clear of liens, claims, encumbrances, and interests subject to higher or better offers; (b) approving the

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the APA, as the case may be; as to any conflicts with respect to such terms, the meanings contained in the APA shall control over the meanings contained in the Motion.

Amended and Restated Asset Purchase Agreement, dated as of November 6, 2003 (the "APA"),[2] by and among WLR Recovery Fund II L.P. and WLR Cone Mills Acquisition LLC (collectively, the "Buyer") and the Debtors; (c) approving the assumption and assignment of certain executory contracts and unexpired leases in connection with such sale; and (d) granting related relief; and the Court having entered an order on November 7, 2003 (the "Sale Procedures Order") approving (i) the Sale Procedures (as that term is defined in the Sale Procedures Order), (ii) the Buyer's Breakup Fee and Expense Reimbursement (as those terms are defined in the Sale Procedures Order); and (iii) the form and manner of notice of the Auction (as that term is defined in the Sale Procedures Order); and a hearing on the Motion having been held on February 9, 2004 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and these cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

FOUND AND DETERMINED THAT:[3]

A.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

---

[2] A copy of the APA is annexed to the Motion as Exhibit A.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

WP3:959986.4                                                                                      62530.1001

B.  The Court has jurisdiction over this Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014.

D.  As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, and the assumption and assignment of the Assumed Contracts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 9014 and in compliance with the Sale Procedures Order to each party entitled thereto, (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Auction, or the assumption and assignment of the Assumed Contracts is or shall be required.

E.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Sale Procedures Order and the Auction was duly noticed.

F.  The Debtors (i) have full corporate power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Assets by the Debtors has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the

APA, and (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate such transactions.

        G.     Approval of the APA and consummation of the Sale at this time are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

        H.     The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a chapter 11 plan in that, among other things, absent the Sale the value of the Assets will be harmed.

        I.     A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee; (ii) counsel for the Buyer; (iii) counsel for the official committee(s) appointed in these cases; (iv) all entities known to have expressed a bona fide interest in acquiring the Assets; (v) all entities (or counsel therefor) known to have asserted any lien, claim, encumbrance, right of refusal or other interest in or upon the Assets; (vi) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion; (vii) all non-debtor parties to the Assumed Contracts; (viii) the United States Attorney's office; (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) the Environmental Protection Agency; (xii) all state and local environmental agencies in any jurisdiction where the Seller owns or has owned or used real property; and (xiii) all entities who have filed a request for service of papers in these cases.

J.  The APA was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

K.  The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

L.  The Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

M.  The consideration provided by the Buyer for the Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

N.  The Sale must be approved and consummated promptly in order to preserve the value of the Assets.

O.  As of the Closing and pursuant to the terms of the APA, the transfer of the Assets to the Buyer will be a legal, valid, enforceable, and effective transfer of the Assets, and will vest the Buyer with all right, title, and interest of the Debtors in the Assets free and clear of all liens, claims, encumbrances and interests, including, but not limited to: (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, *rights based on a change of control as a result of the transactions contemplated in the APA,* tag-along rights, restrictions on sales to competitors, or termination of the Debtors' or the Buyer's interest in the Assets, or any similar rights; (ii) those relating to taxes arising under or

5

out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, (iii) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, options, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (iv) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, "Interests").

      P.     The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Assets to the Buyer and the assignment of the Assumed Contracts and Assumed Liabilities to the Buyer was not free and clear of all Interests of any kind or nature whatsoever, or if the Buyer would, or in the future could, be liable for any of the Interests, including, without limitation, the Excluded Liabilities.

      Q.     The Debtors may sell the Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Interests and (ii) non-debtor parties to Assumed Contracts who did not object, or who withdrew their

WP3:959986.4                                                                                                         62530.1001

objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Interests and (ii) non-debtor parties to Assumed Contracts who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest.

R. The Buyer is not a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and the Buyer shall not assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the APA.

S. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts is in the best interests of the Debtors, their estates, and their creditors. The Assumed Contracts being assigned to the Buyer, and the Assumed Liabilities are an integral part of the APA and the Acquired Business and, accordingly, such assumption and assignment of Assumed Contracts and the Assumed Liabilities are reasonable and enhance the value of the Debtors' estates.

T. The Debtors have (i) cured, or have provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has provided adequate

assurance of their future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.

U. Approval of the APA and assumption and assignment of the Assumed Contracts and consummation of the Sale of the Assets at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

V. Executory contracts and unexpired leases not scheduled by the Debtors under the schedule "Assumed Contracts" in the APA for which the Buyer has indicated an interest in assumption and assignment to it shall be promptly noticed by the Debtors for assumption and assignment, and the Buyer shall have until the hearing with respect to such relief to remove any contracts or leases from consideration.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is granted, as further described herein.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled on the merits.

### Approval of the APA

3. The APA, and all of the terms and conditions thereof, is hereby approved.

4. Pursuant to sections 363(b) of the Bankruptcy Code, the Debtors are authorized to perform their obligations under and comply with the terms of the APA, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the APA.

5. The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the APA, together with all additional

instruments, documents, and agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

6.  This Order and the APA shall be binding in all respects upon all creditors (whether known or unknown) of any Debtor, all non-debtor parties to the Assumed Contracts, all successors and assigns of the Buyer, the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases or the confirmation order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Order.

7.  The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

### Transfer of Assets

8.  Except as expressly permitted or otherwise specifically provided for in the APA or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be transferred to the Buyer, and upon consummation of the APA (the "Closing"), shall be free and clear of all Interests of any kind or nature whatsoever with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with

the same validity, force and effect which they now have as against the Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

9. Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts, customers, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Assets to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the Assets, such persons' or entities' Interests.

10. The transfer of the Assets to the Buyer pursuant to the APA shall constitute a legal, valid, and effective transfer of the Assets, and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Assets free and clear of all Interests of any kind or nature whatsoever.

11. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests in the Debtors or the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests that the person or entity has with respect to the Debtors or the Assets or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity

with respect to the Assets and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Assets of any kind or nature whatsoever.

### Assumption and Assignment to Buyer of Assumed Contracts

12. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the APA, of the Assumed Contracts is hereby approved, and the requirements of section 365(b)(1) and (f) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

13. Notwithstanding anything to the contrary contained herein, as conditions to Closing and to the release of Interests in the Assets held by Bank of America, N.A., in its capacity as collateral and administrative agent (in such capacity, the "DIP Agent") under that certain Post-Petition Credit Agreement dated as of December 11, 2003 (the "DIP Credit Agreement"), contemporaneously with the Closing, Buyer shall remit to the DIP Agent cash funds, in addition to the cash which constitutes the Purchase Price under (and as defined in) the APA, in an amount sufficient to result in Full Payment of the Obligations (as such terms are defined in the DIP Credit Agreement).

14. The Debtors are hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing, the Assumed Contracts free and clear of all Interests of any kind or nature whatsoever and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts and Assumed Liabilities to the Buyer.

15. With respect to the Assumed Contracts: (a) the Assumed Contracts shall be transferred and assigned to, and following the Closing of the Sale remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such transfer and assignment to the Buyer; (b) that are executory contracts of the Debtors under section 365 of the Bankruptcy Code, the Debtors may assume such Assumed Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assumed Contract in accordance with sections 363 and 365(f) of the Bankruptcy Code, and any provision in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows the non-debtor party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, shall constitute an unenforceable anti-assignment provision that is void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment by the Debtors to the Buyer of each Assumed Contract have been satisfied; and (e) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract. Any portion of any Assumed Contract which purports to permit the landlord to cancel the remaining term of such Assumed Contract if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against Buyer, its assignees and sublessees; and the landlords under any

such Assumed Contract shall not have the right to cancel or otherwise modify the Assumed Contract or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assumed Contract to Buyer, or the interruption of business activities at any of the leased premises.

16. All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing under the APA (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtors at the Closing or as soon thereafter as practicable, and the Buyer shall have no liability or obligation arising or accruing prior to the date of the Closing, except as otherwise expressly provided in the APA.

17. The Debtors and the Buyer are hereby authorized and directed to pay all Cure Costs under the Assumed Contracts in accordance with the terms of the APA.

18. Except as provided in the APA or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

**Designation Rights**

19. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to sell the Designation Rights in respect of the Real Property in conjunction with the Sale, upon the terms and conditions set forth in the APA, and are authorized to take all actions and execute all documents necessary or appropriate to effectuate the sale of the Designation Rights. Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Designation Rights

shall be free and clear of all Interests, which such Interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they not have as against the Designation Rights, subject to any claims and defenses the Debtors may possess with respect thereto.

20. Upon the applicable Subject Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer (or its designees(s)) shall be fully and irrevocably vested in all right, title and interest of each parcel of Real Property, free and clear of all Interests of any kind or nature, with all such Interests of any kind or nature to attach to the proceeds of the Sale.

21. Effective as of the applicable Subject Closing Date, each parcel of Real Property conveyed pursuant to the Designation Rights shall, without further order of the Court, be subjecg to the provisions of this Order. The conveyance at issue shall occur immediately upon the fulfillment of all conditions provided for in the APA.

## Additional Provisions

22. The consideration provided by the Buyer for the Assets under the APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

23. The consideration provided by the Buyer for the Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

24. On the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist.

25. This Order (a) shall be effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Debtors or the Assets prior to the Closing have been unconditionally released, discharged and terminated (other than the Assumed Liabilities), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

26. Nothing in this Order or the APA releases, nullifies, or enjoins any liability to a governmental unit under police and regulatory statutes or regulations that any entity would become subject to as the new owner or operator of property after the date of entry of this Order.

27. Except as otherwise expressly provided in the APA, Buyer shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to employees of the Debtors. In addition, except as otherwise expressly provided in the APA, Buyer shall have no liability with respect to any employee pension plan, employee welfare or retention, benefit and/or incentive plan to which any of the Debtors is a party (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and Buyer shall in no way be deemed a party to or assignee

of any such agreement, and no employee of Buyer shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against Buyer any and all claims arising from or relating to such agreement. Any and all notices, if any, required to be given to the Debtors' employees pursuant to The Worker Adjustment and Retraining Notification Act (the "WARN Act"), or any similar federal or state law, shall be the sole responsibility and obligation of the Debtors, and Buyer shall have no responsibility or liability therefor.

28. Any amounts that become payable by the Debtors to Buyer pursuant to the APA (and related agreements executed in connection therewith) (a) shall constitute administrative expenses of the Debtors' estates under sections 503(b) and 507(a)(l) of the Bankruptcy Code and (b) shall be paid by the Debtors in the time and manner provided for in the APA (and such related agreements) without further Court order.

29. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

30. All entities who are presently, or on the Closing may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Buyer on the Closing.

31. Except for the Assumed Liabilities or as expressly permitted or otherwise specifically provided for in the APA or this Order, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the APA, to the extent allowed by law, the Buyer shall not be liable for

WP3:959986.4    62530.1001

any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing.

32. Following the Closing, no holder of an Interest in the Debtors or the Assets shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Interest, or any actions that the Debtors may take in their chapter 11 cases.

33. This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Buyer, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyer against (i) any of the Excluded Liabilities or (ii) any Interests in the Debtors or the Assets, of any kind or nature whatsoever.

34. ~~Notwithstanding Fed. R. Bankr. P. 6004(g) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.~~ In the absence of any entity obtaining a stay pending appeal, the Debtors and the Buyer are free

to close under the APA at any time. The transactions contemplated by the APA are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer (including the assumption and assignment of any of the Assumed Contracts), unless such authorization is duly stayed pending such appeal. The Buyer is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

35. The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Buyer, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Assets to be sold to the Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

36. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

Dated: Wilmington, Delaware
February 10, 2004

MARY F. WALRATH
CHIEF UNITED STATES BANKRUPTCY JUDGE