IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.,* | ) | Case No. 03–12944 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) **Hearing Date: September 16, 2004 at 11:30 a.m. (ET)** | |
| | ) **Objections Due: September 13, 2004 at 4:00 p.m. (ET)** | |

## NOTICE OF MOTION

TO:   (I) THE UNITED STATES TRUSTEE, (II) COUNSEL TO THE DEBTORS'
PREPETITION BANK AND INSURANCE LENDERS, (III) COUNSEL TO THE AD
HOC COMMITTEE OF THE DEBTORS' BONDHOLDERS AND THE INDENTURE
TRUSTEE FOR THE BONDS, (IV) COUNSEL TO WL ROSS, (V) COUNSEL TO
THE OFFICIAL CREDITORS COMMITTEE, AND (VI) ALL PARTIES THAT HAVE
REQUESTED NOTICE IN THESE CASES.

     The above-captioned debtors and debtors in possession (collectively, the "Debtors") have
filed the attached **MOTION OF DEBTORS, PURSUANT TO BANKRUPTCY RULE 9019,
TO APPROVE STIPULATION AND ORDER AMONG DEBTORS, PENSION BENEFIT
GUARANTY CORPORATION AND THE MASTER PENSION PLAN OF CONE MILLS
CORPORATION** (the "Motion").

     Responses, if any, to the Motion must be filed with the United States Bankruptcy Court
for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or
before **September 13, 2004 at 4:00 P.M. (ET)** (the "Objection Deadline").

     At the same time, you must serve a copy of your response upon the undersigned counsel.

     A HEARING ON THE MOTION WILL BE HELD ON SEPTEMBER 16, 2004 AT
11:30 A.M. (ET) BEFORE THE HONORABLE MARY F. WALRATH, IN THE UNITED
STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET
STREET, 6TH FLOOR, WILMINGTON, DELAWARE 19801.

IF YOU FAIL TO RESPOND TO THE MOTION IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED THEREIN WITHOUT FURTHER NOTICE OR A HEARING.

Dated: Wilmington, Delaware
       September 2, 2004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
Sean T. Greecher (No. 4484)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253

– and –

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Andrew N. Rosenberg
Brian S. Hermann
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:   (212) 757-3990

Counsel for Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03-12944 (MFW) |
| | ) | |
| Debtors | ) | (Jointly Administered) |
| | ) | |

**Hearing Date: September 16, 2004 at 11:30 a.m. (ET)**
**Objections Due: September 13, 2004 at 4:00 p.m. (ET)**

### MOTION OF DEBTORS, PURSUANT TO BANKRUPTCY RULE 9019, TO APPROVE STIPULATION AND ORDER AMONG DEBTORS, PENSION BENEFIT GUARANTY CORPORATION AND THE MASTER PENSION PLAN OF CONE MILLS CORPORATION

Cone Mills Corporation ("Cone Mills"), one of the above-captioned debtors and debtors-in-possession (each a "Debtor," and collectively, the "Debtors"), hereby submits this motion (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order approving the Stipulation and Order (the "Stipulation") among the Debtors, the Pension Benefit Guaranty Corporation (the "PBGC") and the Master Pension Plan of Cone Mills Corporation (the "Pension Plan"). The Stipulation is attached to this Motion as Exhibit A. In support of this Motion, the Debtors, by and through their attorneys, respectfully state as follows:

### JURISDICTION

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The

statutory predicates for the relief requested herein are Bankruptcy Rule 9019 and Bankruptcy Code section 105(a).

## BACKGROUND

2.      On September 24, 2003 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

3.      The Debtors continue in possession of their property pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On February 11, 2004, this Court granted the Debtors' motion, dated January 6, 2004, seeking approval of the sale of substantially all of the Debtors' assets to WL Ross and the assumption by the Debtors and assignment to WL Ross of substantially all of the Debtors' executory contracts and unexpired leases (the "WL Ross Asset Sale") pursuant to the Amended and Restated Asset Purchase Agreement, by and among WL Ross and the Debtors, dated November 6, 2003 (the "APA").  The WL Ross Asset Sale closed on March 12, 2004.

5.      Among the assets conveyed to WL Ross under the APA was stock in various entities which conducted operations or owned real property in Mexico (the "Mexican SubsidiaryAssets").  The proceeds from the sale of the Mexican Subsidiary Assets are in the Debtors' account and are property of the Debtors' estates.

6.      On August 20, 2004, the Debtors filed their First Amended Disclosure Statement Accompanying Second Amended Chapter 11 Plan of Liquidation and their Second Amended Chapter 11 Plan of Liquidation (the "Chapter 11 Plan").  The hearing on confirmation of the Chapter 11 Plan is scheduled for October 18, 2004.

### A.      The Pension Plan.

7.      The Master Pension Plan of Cone Mills Corporation is a single-employer defined benefit pension plan which is covered under Title IV of ERISA (the "Pension Plan").

Cone Mills is the employer sponsor of the Pension Plan. The purpose of the Pension Plan is to provide a monthly pension income to Cone Mills' hourly and salaried employees.

8.      Pension Benefit Guaranty Corporation ("PBGC") is an agency and a wholly-owned corporation of the United States Government established under section 4002 of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1302 ("ERISA"), to administer and enforce the defined benefit pension plan termination insurance program created under Title IV of ERISA.

9.      The Pension Plan provides that Cone Mills was to fund the Plan by making "annual contributions which equal or exceed the minimum funding standards of the [Tax] Code or ERISA and which together with the net increment from operations of the Trust Fund will provide benefits payable under the Plan." See Pension Plan at § 4.02.

10.      Cone Mills made all of the statutorily required contributions to the Pension Plan for Plan years ending prior to December 31, 1999. The Pension Plan was also at all times current on its pension obligations to the Pension Plan participants.

11.      The Debtors and the PBGC are party to an agreement dated as of April 17, 2000 (the "PBGC Agreement"). The PBGC Agreement provided for the Debtors to make "Additional Contributions." These "Additional Contributions" equal 20% of the Pension Plan's theoretical "unfunded benefit liabilities" within the meaning of 29 U.S.C. § 1301(a)(18), and were to be paid into the Pension Plan. The Debtors believe that the PBGC Agreement required the Debtors to make contributions to the Plan substantially in excess of those required by law.

12.      WL Ross did not assume Cone Mills' obligations under the Pension Plan as part of the APA.

B.      **The North Carolina Proceeding.**

13.      As of the date hereof, the Pension Plan has not been terminated.

14.    However, on January 6, 2004, the PBGC sent a notice of termination to the Debtors, stating that it intended to proceed under 29 U.S.C. § 1342 to have the Pension Plan terminated and pursuant to 29 U.S.C. § 1348 to have January 29, 2004 established as the Pension Plan's termination date. The Debtors have disputed the PBGC's ability to establish January 29, 2004 as the termination date since the WL Ross Asset Sale did not close until March 12, 2004.

15.    On March 23, 2004, the PBGC filed a complaint in the Middle District of North Carolina (Case 1:04 CV 258) (the "North Carolina Proceeding") seeking an order from such Court: (a) terminating the Pension Plan; (b) appointing the PBGC as statutory trustee of the Pension Plan; and (c) establishing January 29, 2004 as the termination date of the Pension Plan. The North Carolina Proceeding is currently pending.

## C.    The PBGC Claims.

16.    On January 28, 2004, the PBGC filed three separate proofs of claim against each of the four Debtors (collectively, the "PBGC Claims") for, among other things, unpaid contributions to the Pension Plan and unfunded benefit liabilities which the PBGC asserted would have to be paid once the Pension Plan was terminated. Specifically, the four types of claims asserted against each Debtor are for (a) unliquidated amounts allegedly owed for the PBGC's insurance premiums, interest and penalties (the "Premium Claims"); (b) alleged unfunded benefit liabilities arising upon termination of the Pension Plan in the amount of $58,700,000 (the "Unfunded Benefit Liability Claims"); (c) administrative and priority claims for a portion of the $58,700,000 Unfunded Benefit Liability Claims (the "Priority Claims"); and (d) contributions owed to the Pension Plan.

17.    The PBGC has also informed the Debtors (i) that they believe they have claims against the Debtors' non-debtor Mexican subsidiaries pursuant to 29 U.S.C. § 1362, which provides that all of the members of a company's "control group" are jointly and severally

liable to the PBGC for any "unfunded benefit liabilities" upon termination of such company's pension plan and (ii) that such "joint and individual" claims entitle the PBGC – allegedly as a direct creditor of the Debtors' non-debtor Mexican subsidiaries – to the proceeds of the sale of the Debtors' Mexican Subsidiary Assets ahead of the creditors of the Debtors' estates (the "Control Group Claim").[1]

18.    On May 19, 2004, the PBGC filed two separate Requests for Allowance and Payment of Administrative Expenses Claims against Cone Mills (collectively, the "PBGC Requests").

19.    On June 4, 2004, the Debtors filed a motion (the "Rejection Motion") seeking entry of an order authorizing the Debtors, among other things, to reject the PBGC Agreement.  On June 22, 2004, the Court approved the Rejection Motion and the Debtors' rejection of the PBGC Agreement was effective as of June 30, 2004.

20.    On July 29, 2004, the PBGC filed a claim in the amount of $58.7 million (the "PBGC Rejection Damages Claim") for alleged damages resulting from Cone Mills' rejection of the PBGC Agreement.

D.    **The Adversary Proceeding.**

21.    The Debtors made approximately $13.5 million in "Additional Contribution" payments to the Pension Plan pursuant to the PBGC Agreement.  Approximately $4.5 million was paid in the 90 day period preceding the Petition Date; an additional $2.5 million was paid in the one year "insider" preference period.

22.    On May 25, 2004, the Debtors filed a complaint (the "Complaint") initiating Adversary Proceeding No. 04-53729 (MFW) ("Adversary Proceeding"), in which the

---

[1]    The Mexican subsidiaries did not guarantee any of the Debtors' obligations.

Debtors (a) objected to the PBGC Claims (the "Objection") and (b) asserted counterclaims against the PBGC and the Pension Plan to (i) avoid transfers of property under the PBGC Agreement as preferential transfers and fraudulent conveyances in the amount of $13.5 million and (ii) equitably subordinate the PBGC Claims based on the PBGC's actions in connection with the PBGC Agreement (the "Avoidance Action").

23.     On June 22, 2004, this Court entered a stipulation and order extending the deadline for filing an answer to the Complaint through and including July 30, 2004.

24.     On July 19, 2004, this Court entered a second stipulation and order extending the deadline for filing an answer to the Complaint through and including August 30, 2004. Since then, the parties have been engaged in settlement discussions, which have resulted in the settlement (the "Settlement") contained in the Stipulation.[2]

## SUMMARY OF THE STIPULATION

25.     The Stipulation provides, among other things, that (a) all of the PBGC's administrative, priority and general unsecured claims against the Debtors' estates will be reduced and allowed as a single general unsecured non-priority claim in the amount of $58.7 million; (b) the PBGC will not vote against the Plan; (c) the Debtors and the PBGC will enter into a Trusteeship Agreement, pursuant to which the Debtors and the PBGC agree (i) to terminate the Pension Plan of as of January 29, 2004 and (ii) to the appointment of the PBGC as trustee of the Pension Plan; (d) the PBGC, the Debtors and the Pension Plan will forever release and discharge each other from any and all claims, causes of action (including those held derivatively), liabilities, objections, suits, debts, sums of money, damages, demands or judgments arising out of or in connection with or in any way relating to the Pension Plan or the Debtors' bankruptcy

---

[2]     In light of the Settlement, on August 27, 2004, the Court entered a third stipulation and order extending the deadline for filing an answer to the Complaint through and including September 30, 2004.

cases, except that nothing contained therein shall release any non-debtor third party; (e) the

PBGC will withdraw with prejudice its joinder to the Ad Hoc Bondholder Committee's remand

motion; (f) the PBGC will dismiss the North Carolina Proceeding; (g) the PBGC will not seek

funds from the Debtors' estates by virtue of its Control Group Claim; and (h) the Debtors will

dismiss this Adversary Proceeding with prejudice.

### RELIEF REQUESTED

26.      By this Motion, the Debtors seek entry of an order, pursuant to

Bankruptcy Rule 9019 and Bankruptcy Code section 105(a), approving the Stipulation attached

hereto as Exhibit A, which settles the Adversary Proceeding, the PBGC Claims Objection, the

North Carolina Proceeding, and the Control Group Claims.

### BASIS FOR RELIEF REQUESTED

27.      Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after

a hearing the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The

settlement of time-consuming and burdensome litigation, especially in bankruptcy context, is

encouraged. See In re Penn Central Transportation Co., 596 F.2d 1102 (3rd Cir. 1979) ("(i)n

administering reorganization proceedings in an economical and practical manner it will often be

wise to arrange the settlement of claims . . . ."), quoting In re Protective Committee for

Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). In

determining the fairness and equity of a compromise in bankruptcy, the United States Court of

Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[ ]

itself of all facts necessary to form an intelligent and objective opinion of the probabilities of

ultimate success should the claims be litigated, and estimate[ ] the complexity, expense and

likely duration of such litigation, and other factors relevant to a full and fair assessment of the

[claims]." See In re Penn Central Transportation Co., 596 F.2d 1127, 1146 (3d Cir. 1979); see

also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting In re Louise's Inc., 211 B.R. 798, 801 (D. Del 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

28.     More recently, the Third Circuit Court of Appeals enumerated the following four-factor test to be used in deciding whether a settlement should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re RFE Industries, Inc., 283 F.3d 159, 165 (3d Cir. 2002) (citation omitted).

29.     Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court. See In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Meyers), 91 F.3d 389 (3d Cir. 1996). The bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983).

### APPLICATION TO THE STIPULATION

30.     The Stipulation and Order resolves the four separate litigation proceedings between the PBGC and the Debtors. Although the Settlement involves resolution of multiple issues, it basically has two essential elements. The Debtors, on the one hand, agree to dismiss the Adversary Proceeding and to allow the PBGC's general unsecured claim in the amount asserted. The PBGC, on the other hand, has agreed not to pursue its Control Group Claim to obtain any monies from the Debtors' estates and to waive its administrative and priority claims.

In sum, the Settlement allows the Debtors to settle all of the PBGC's Claims without the payment of any monies other than the allowance of the PBGC's general unsecured claim.

31.    The Debtors' submit that the novelty of the issues raised in the Complaint and by the Control Group Claim is irrefutable and that the expense to the estates and to each of the parties involved in litigating them, along with the issues arising in connection with the PBGC's administrative, priority and unsecured Claims and in the North Carolina Proceeding, would be substantial. The Debtors are also certain that it will take a significant length of time to litigate these issues. While the Debtors believe that they would ultimately prevail in each of these proceedings, the issues involved are complex and will be costly to litigate, and in certain instances present issues of first impression for this or any other Court. Accordingly, for the reasons set forth below, the Debtors believe that the settlement is in the best interests of their estates and should be approved.

**A.    Probability of Success in Litigation.**

*1.    PBGC Claims Objections.*

32.    The PBGC has filed fifteen claims against the Debtors: twelve PBGC Claims, the two PBGC Requests and the Rejection Damages Claim. These claims total more than $58.7 million.[3] The Debtors have objected to the twelve PBGC Claims and intend to object to the PBGC Requests and the Rejection Damages Claim, if the Stipulation is not approved.

33.    The gravamen of the Debtors' objection to the PBGC Claims is that the PBGC's $58.7 million general unsecured claim was based on an unduly low statutory interest rate and a premature termination date, thus likely inflating the amount of the PBGC Claims. The

---

[3]    The PBGC has communicated to the Debtors' counsel that it is the PBGC's position that the Rejection Damages Claim is not duplicative of the PBGC Claims, and accordingly, the total amount of the PBGC's claims exceeds $58.7 million.

PBGC's ability to use the low statutory rate has been heavily litigated in different circuits and was most recently decided in the PBGC's favor in In re US Airways Group, Inc., et al., 303 B.R. 784 (Bankr. E.D. Va. 2002). While the Debtors believe that their position is meritorious, the result in this instance is far from certain.

### 2.    *Avoidance Action.*

34.    The Debtors are seeking $13.5 million from the PBGC and Pension Plan in the Adversary Proceeding on the grounds that the Additional Contributions the Debtors made to the Pension Plan were preferential transfers and fraudulent transfers and should be avoided and recovered by the Debtors. To prevail on these claims, the Debtors will need to prove, among other things, that (i) they were insolvent at various points in time and (ii) payments to the Pension Plan can be recovered as a matter of law as a fraudulent transfer and/or preferential transfer. Again, while the Debtors are confident in their position, these issues involve novel areas of the law and success is by no means guaranteed.

### 3.    *North Carolina Proceeding.*

35.    The North Carolina Proceeding brought by the PBGC is also ongoing and the issues involved, such as the appropriate Pension Plan termination date, is one where the PBGC is traditionally afforded considerable discretion. While the Debtors believe that they have a good argument, the outcome is not free from doubt.

### 4.    *Control Group Claim.*

36.    The PBGC has asserted that it would be entitled to a substantial portion of the proceeds of the Asset Sale through its Control Group Claim against the Debtors' Mexican subsidiaries. While 29 U.S.C. § 1362 establishes the PBGC's right under U.S. law to a joint and several claim for unfunded pension plan benefit liabilities against non-debtor, non-U.S. members

of the Debtors' control group, the Debtors believe that this Control Group Claim would ultimately not be enforceable against the Mexican subsidiaries. Nevertheless, if the PBGC were to prevail on these Control Group Claims, they would potentially be entitled to substantial additional recoveries at the expense of U.S. creditors. The Debtors submit that it is in the best interest of these estates to eliminate these claims, especially since this is apparently an issue of first impression and hence, the outcome is again inherently uncertain.

### B.    Difficulties of Collection.

37.    This prong is not a factor in these cases and therefore does not adversely impact the Debtors' request for the relief set forth herein.

### C.    Complexity and Expense.

38.    The issues involved in each of the four litigation proceedings are complex and litigating each to conclusion would involve burdening the estates with potentially millions of dollars in additional fees. Specifically,

- The outcome of the Adversary Proceeding ultimately hinges on a complex analysis as to whether the Debtors were "solvent" at various points in time.

- The Control Group Claim involves a determination of whether the PBGC's joint and several claims would ultimately be enforceable against non-debtor foreign subsidiaries and also involves resolution of various issues under Mexican debtor-creditor law. The Debtors believe that many of these issues would ultimately have to be resolved by a Mexican court, adding further expense and delay.

- Resolution of the North Carolina Proceeding would require a factual determination as to whether the PBGC had followed certain administrative

regulations in establishing a "termination date" for the Pension Plan and its ability to do so under federal law.

- A determination on the PBGC Claims Objection would involve both a costly actuarial analysis, as well as resolution of the appropriate standards to be used in calculating the "unfunded benefits liability" (an issue as to which there is no controlling Third Circuit precedent).

### D.    Paramount Interests of Creditors.

39.    This factor undoubtedly weighs most heavily in favor of Court approval of the Stipulation. The Debtors believe that what they are giving up under the Stipulation is well worth it when compared to what they would sacrifice if the PBGC prevails in its litigation with the Debtors. The Debtors will be relieved of all liability for the PBGC's administrative, priority and Control Group Claims (collectively, the "Senior Claims") – any of which if successful would have to be paid prior to the Debtors making distributions under its Chapter 11 Plan to their secured and unsecured creditors. While the Debtors believe that they have strong claims in the Adversary Proceeding, the Debtors have determined that it is in the best interests of their estates to dismiss these claims in exchange for the elimination of all of the PBGC's Senior Claims. Under the Stipulation, the parties are achieving finality as to all existing and potential litigation involving the termination of the Pension Plan for an allowed general unsecured non-priority claim in the aggregate amount of $58.7 million. In addition, pursuant to the terms of the Stipulation, the Debtors will be relieved of the continuing costly obligation of administering the Pension Plan. Lastly, the Stipulation helps the Debtors quickly move towards plan confirmation and make distributions more promptly to their creditors.

40.    However, if the Stipulation is not approved, the parties will have no choice but to litigate all of the issues raised in the North Carolina Proceeding, the Adversary Proceeding

and the various claims-related disputes. The only certain outcome of litigation would be substantial litigation costs that would deplete creditors' recoveries. In addition, miring these estates in litigation will impair the Debtors' ability to efficiently and expeditiously confirm a plan, make distributions to creditors and close these bankruptcy cases.

41. For these reasons, the Debtors submit that their entry into the Stipulation is in the best interest of the Debtors, their estates and their creditors.

## NOTICE

42. Notice of the Motion has been given to the Office of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Wilmington, Delaware 19801-3519 (Attention: Joseph J. McMahon); counsel for the Creditors' Committee, Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022-4689 (Attention: Mark Indelicato) and Cozen & O'Connor, 1201 North Market Street, Suite 1400, Wilmington, Delaware 19801-3519 (Attention: Mark E. Felger); counsel for the Ad Hoc Bondholder Committee, Jones Day, 222 East 41st Street, New York, New York 10017-6702 (Attention: Paul D. Leake); counsel for the Debtors' prepetition bank lenders, Wachtell, Lipton, Rosen & Katz, 51 West 52 Street, New York, New York 10019-6150 (Attention: Richard D. Feintuch) and Richards Layton & Finger, PA, One Rodney Square, Post Office Box 551, Wilmington, Delaware 19899-0551 (Attention: Mark D. Collins); counsel for The Prudential Insurance Company, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036 (Attention: Barry N. Seidel) and Morris Nichols Arsht & Tunnel, 1201 North Market Street, Post Office Box 1347, Wilmington, Delaware (Attention: Robert J. Dehney); and counsel for the Indenture Trustee for the Debtors' bond issuance, Dechert LLP, 30 Rockefeller Plaza, New York, New York 10112 (Attention: Glenn E. Siegel) and Rosenthal, Monhait, Gross & Goddess, P.A., 919 Market Street, Suite 1401, Wilmington, Delaware 19801 (Attention: Kevin

Gross), and all parties who have filed notices of appearance in these cases. The Debtors submit that it is not necessary to give any further notice.

WHEREFORE, the Debtors respectfully request the Court enter the two orders substantially in the form annexed hereto and grant the Debtors such other and further relief as it deems necessary and proper.

Dated: Wilmington, Delaware
September 2, 2004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Andrew N. Rosenberg
Brian S. Hermann
Penny Dearborn
Lori E. Chasen
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Counsel for the Debtors and Debtors in Possession

Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03-12944 (MFW) |
| | ) | |
| Debtors | ) | (Jointly Administered) |
| | ) | |

### STIPULATION AND ORDER (i) REDUCING, RECLASSIFYING AND ALLOWING THE PBGC'S PREPETITION CLAIMS, AND (ii) DISMISSING THIS ADVERSARY PROCEEDING

This Stipulation is entered into this 2nd day of September 2004 by and among counsel to the above-captioned debtors and debtors in possession (each a "Debtor," and collectively, the "Debtors"), the Pension Benefit Guaranty Corporation (the "PBGC") and the Master Pension Plan of Cone Mills Corporation (the "Pension Plan").

      A.      On September 24, 2003, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

      B.      The Debtors continue in possession of their property pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

      C.      On January 28, 2004, the PBGC filed three separate proofs of claim against each of the four Debtors (collectively, the "PBGC Claims"). The three types of claims asserted against each Debtor are for (a) unliquidated amounts allegedly owed for the PBGC's insurance premiums, interest and penalties (the "Premium

Claims"); (b) alleged unfunded benefit liabilities for the Pension Plan in the amount of $58,700,000 (the "Unfunded Benefit Liability Claims"); and (c) contributions owed to the Pension Plan (the "Contribution Claims").   The PBGC has asserted administrative and priority status for portions of the foregoing claims (the "Priority Claims").

D.    On March 23, 2004, the PBGC filed a complaint in the Middle District of North Carolina (Case 1:04 CV 258) (the "North Carolina Proceeding") seeking an order from such Court:  (a) terminating the Pension Plan; (b) appointing the PBGC as statutory trustee of the Pension Plan; and (c) establishing January 29, 2004 as the termination date of the Pension Plan.  The North Carolina Proceeding is currently pending.

E.    On May 19, 2004, the PBGC filed two separate Requests for Allowance and Payment of Administrative Expenses Claims against Cone Mills (collectively, the "PBGC Requests").

F.    On May 25, 2004, the Debtors filed a complaint initiating the adversary proceeding of Cone Mills Corporation v. Pension Benefit Guaranty Corporation and Master Pension Plan of Cone Mills Corporation (Adv. Pro. No. 04-53729 (MFW)) (the "Complaint"), in which the Debtors (a) objected to the PBGC Claims (the "Objection") and (b) asserted counterclaims against the PBGC and the Pension Plan to (i) avoid transfers of property based on preferential transfers and fraudulent conveyances and (ii) equitably subordinate the PBGC Claims (the "Avoidance Action").

G.    On June 4, 2004, the Debtors filed a motion (the "Rejection Motion") seeking entry of an order authorizing the Debtors, among other things, to reject that certain agreement, dated as of April 17, 2000, between the Debtors and the PBGC

(the "PBGC Agreement"). The PBGC Agreement provided for the Debtors to make "Additional Contributions." These "Additional Contributions" equal 20% of the Pension Plan's "unfunded benefit liabilities" within the meaning of 29 U.S.C. § 1301(a)(18), and were to be paid into a "Trust Fund" under the Pension Plan.

H.    On June 22, 2004, the Court approved the Debtors' Rejection Motion and the Debtors' rejection of the PBGC Agreement was effective as of June 30, 2004.

I.    On June 22, 2004, this Court entered a Stipulation and Order extending the deadline for filing an answer to the Complaint through and including July 30, 2004.

J.    On July 19, 2004, this Court entered a second stipulation and order extending the deadline for filing an answer to the Complaint through and including August 30, 2004. Since then, the parties have been engaged in settlement discussions, which have resulted in the settlement (the "Settlement") contained in this Stipulation.

K.    On July 29, 2004, the PBGC filed a claim in the amount of $58.7 million (the "PBGC Rejection Damages Claim") for alleged damages resulting from the Debtors' rejection of the PBGC Agreement.

L.    On August 20, 2004, the Debtors filed their First Amended Disclosure Statement Accompanying Second Amended Chapter 11 Plan of Liquidation and their Second Amended Chapter 11 Plan of Liquidation (the "Plan"). The hearing on confirmation of the Plan is scheduled for October 18, 2004.

M.     On August 27, 2004, this Court entered a third stipulation and order extending the deadline for filing an answer to the Complaint through and including September 30, 2004.

### NOW, THEREFORE, IT IS HEREBY STIPULATED AND

**AGREED**, by and among the Debtors, the PBGC and the Pension Plan as follows:

1.   All of the PBGC's claims against the Debtors' estates, including, without limitation, the PBGC Claims, the PBGC Requests and the PBGC Rejection Damages Claim and the portions of those claims asserted on behalf of the Pension Plan, shall be reduced and allowed as a single general unsecured non-priority claim against the Debtors  in the amount of $58.7 million (the "Allowed PBGC General Unsecured Claim").

2.   Subject to the occurrence of the Stipulation Effective Date (as defined below), the PBGC shall (a) not object to the Plan or any subsequent plan which provides substantially similar non-economic treatment and the same or better recoveries and distributions and payment terms as under the current Plan ("Economic Treatment") with respect to the Allowed PBGC General Unsecured Claim and (b) not vote against the Plan or any subsequent plan which provides substantially similar non-economic treatment and the same or better Economic Treatment with respect to the Allowed PBGC General Unsecured Claim; provided, however, the foregoing shall not adversely affect, prejudice, limit, restrict, impair, waive or estop the rights, claims or causes of action of the PBGC or the Pension Plan against any person or entity other than the Debtors (the "Non-Debtors") in any forum, including but not limited to rights, claims, or causes of action against such Non-Debtors with respect to any asset valuation,

4

allocation of proceeds, or dividends or distributions made to the Debtors by their non-debtor subsidiaries.

       3.  On the Stipulation Effective Date, the adversary proceeding commenced by the filing of the Complaint shall be dismissed with prejudice.

       4.  On the Stipulation Effective Date, the Debtors and the PBGC shall enter into the Trusteeship Agreement,[1] pursuant to which the Debtors and the PBGC agree (a) to terminate the Pension Plan as of January 29, 2004 and (b) to the appointment of the PBGC as trustee of the Pension Plan. Promptly after the Stipulation Effective Date, the PBGC shall dismiss the North Carolina Proceeding.

       5.     On the Stipulation Effective Date, the PBGC shall withdraw with prejudice its joinder to the Ad Hoc Bondholder Committee's Motion on Remand from the District Court for Relief from the Sale Order because of New Evidence filed on July 6, 2004; provided, however, the foregoing shall not adversely affect, prejudice, limit, restrict, impair, waive or estop the rights, claims or causes of action of the PBGC or the Pension Plan against any of the Non-Debtors in any forum, including but not limited to rights, claims, or causes of action against such Non-Debtors with respect to any asset valuation, allocation of proceeds, or dividends or distributions made to the Debtors by their non-debtor subsidiaries.

       6.  Except as provided herein, on the Stipulation Effective Date, the PBGC, the Debtors and the Pension Plan hereby forever release and discharge each other from any and all claims, causes of action (including those held derivatively),

---

[1]   The Trusteeship Agreement is attached hereto as Exhibit A.

liabilities, obligations, suits, debts, sums of money, damages, demands or judgments

arising out of or in connection with or in any way relating to the Pension Plan or the

Debtors' bankruptcy cases.

       7.   PBGC and the Pension Plan agree to limit their claim against the

Debtors' estates to the Allowed PBGC General Unsecured Claim, notwithstanding any

judgment or award they may obtain against any other person or entity.  The PBGC

further agrees that it will not file a claim, demand or cause of action in any forum

which expressly requests as a remedy to it or that specifically seeks to compel another

party to seek a remedy that any dividends or distributions made to the Debtors by their

non-debtor subsidiaries in connection with the sale of the assets of such subsidiaries be

returned by the Debtors to such subsidiaries; provided that, except as expressly set forth

above, the foregoing, including but not limited to the PBGC's agreement not to seek a

specific remedy available to it will not in any way adversely affect, prejudice, limit,

restrict, impair, waive or estop the PBGC's rights, claims, or causes of action against

the Non-Debtors, including but not limited to rights, claims, or causes of action against

such Non-Debtors with respect to any asset valuation, allocation of proceeds, or

dividends or distributions made to the Debtors by their non-debtor subsidiaries.

       8.   Nothing contained herein shall release any person or entity other

than the parties to this Stipulation from any claims, causes of action (including those

held derivatively), liabilities, obligations, suits, debts, sums of money, damages,

demands or judgments.  Without limiting the foregoing, nothing contained herein shall

impair any claim of PBGC or the Pension Plan against W.L. Ross & Co.,  any entity

affiliated with W.L. Ross & Co., or any entity owned in whole or in part by Wilbur

Ross. No order of the Court, or provision of the Plan or any subsequent plan, or of any order confirming the Plan or any subsequent plan, and no finding of the Court in connection with any Plan or subsequent plan, shall adversely affect, prejudice, limit, restrict, impair, waive or estop the rights, claims or causes of action of PBGC or the Pension Plan against any Non-Debtors, including but not limited to rights against such Non-Debtors with respect to any asset valuation or allocation of proceeds from the sale of assets.

9. The effectiveness of this Stipulation is conditioned on the Court entering an order approving the Stipulation on or before September 20, 2004, and having become final on or before October 1, 2004.

10. This Stipulation may not be amended or modified except by subsequent agreement in writing signed by all of the parties.

11. This Stipulation shall constitute the entire agreement between the parties with respect to the subject matter hereof and shall supersede any previous negotiations, commitments and writing with respect to such subject matter.

12. The Stipulation shall be governed by and construed in accordance with applicable federal law.

13. Nothing contained or provided for herein shall be deemed to constitute a waiver or admission by any party with respect to any rights, claims, defenses, or objections if the Court does not enter an order approving this Stipulation or such order does not become final and non-appealable (the date that such order becomes final and non-appealable, the "Stipulation Effective Date"). No party may use or refer

to this Stipulation or related motion papers filed with the Court if such order does not become final and non-appealable.

14. This Stipulation shall be binding upon all successors and assigns of the parties hereto, including but not limited to, any subsequently appointed Chapter 11 or Chapter 7 trustee of any of the Debtors.

15. This Stipulation may be executed in one or more counterparts, all of which shall be considered one and the same document, and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, it being understood that all parties need not sign the same counterpart.

16. Each party hereto represents (with respect to the Debtors, upon approval by the Bankruptcy Court of this Stipulation) that (x) this Stipulation (i) has been duly and validly authorized, executed and delivered by such party, and (ii) is the legal, valid and binding obligation of such party and (y) it has full power and authority to perform its obligations hereunder.

Dated: Wilmington, Delaware
        September __, 2004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Pauline K. Morgan_

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for the Debtors and Debtors in Possession

PENSION BENEFIT GUARANTY CORPORATION

_Kartar S. Khalsa_

Kartar S. Khalsa
1200 K Street N.W., Suite 340
Washington, DC 20005-4026
Telephone: (202) 326-4020 x6350
Facsimile: (202) 326-4112

Counsel for the Pension Benefit Guaranty Corporation

9

CONE MILLS CORPORATION PENSION TRUST,
By its Directed Trustee, STATE STREET BANK AND
TRUST COMPANY

David Stratton (Bar No. 960)
PEPPER HAMILTON LLP
1201 Market Street
Wilmington, Delaware  19899
Telephone:  (302) 777-6500

- and –

Stephen Z. Starr, Esq.
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York  10022
Telephone:  (212) 318-6000

# Exhibit A

## AGREEMENT FOR APPOINTMENT OF
## TRUSTEE AND TERMINATION OF PLAN

THIS AGREEMENT is made as of the last date listed below by and between the Pension Benefit Guaranty Corporation ("PBGC") and Cone Mills Corporation (the "Company")

### WITNESSETH:

1.   PBGC is a wholly-owned United States Government corporation created under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U S C §§ 1301-1461 (2000 & Supp. I 2001) ("ERISA").

2.   The Company is a corporation organized under the laws of North Carolina with its principal place of business located in Greensboro, North Carolina.

3   The Company established the Master Pension Plan of Cone Mills Corporation (the "Plan") to provide retirement benefits for certain of its employees.

4.   On January 29, 2004, the Company was a contributing sponsor of the Plan for purposes of ERISA. 29 U.S.C. § 1301(a)(13).

5.   The Plan is an employee pension benefit plan to which 29 U.S.C. § 1321(a) applies and is not exempt under 29 U.S.C. § 1321(b). The Plan is therefore subject to Title IV of ERISA.

6   The Company is the administrator of the Plan within the meaning of 29 U.S.C §§ 1002(16) and 1301(a)(1).

7.   The Company filed for reorganization under Chapter 11 of the Bankruptcy Code on September 24, 2003.

8.   On January 26, 2004, the PBGC issued a Notice of Determination, pursuant to 29 U.S C § 1342(a)(2), (4), that the Plan will be unable to pay benefits when due, that the possible long-run loss of the PBGC with respect to the Plan may reasonably be expected to

increase unreasonably if the Plan is not terminated, and that pursuant to 29 U.S.C. § 1342(c), termination of the Plan effective January 29, 2004, is necessary in order to protect the interests of the Plan's participants and to avoid an unreasonable increase in the liability of the PBGC.

NOW THEREFORE, the parties agree

1.    Pursuant to 29 U.S.C. § 1342(c), the Plan is hereby terminated.

2.    Pursuant to 29 U S C § 1348, the date of Plan termination is January 29, 2004.

3.    Pursuant to 29 U.S.C. § 1342(c), PBGC is hereby appointed trustee of the Plan

4.    The Company and any other person having possession, custody or control of any records, assets or other property of the Plan shall transfer, convey and deliver to PBGC such records, assets or property

5.    PBGC will have, with respect to the Plan, all of the rights and powers of a trustee specified in ERISA or otherwise granted by law

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals or caused this document to be executed by the duly authorized persons on the date appearing opposite their names.

PENSION BENEFIT GUARANTY CORPORATION

Dated:_____    By:_____
                    Name:_____
                    Title:_____

CONE MILLS CORPORATION

Dated:_____    By:_____
                    Name:_____
                    Title:_____

2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03-12944 (MFW) |
|  | ) |  |
| Debtors | ) | (Jointly Administered) |
|  | ) |  |

**ORDER PURSUANT TO BANKRUPTCY RULE 9019
APPROVING THE STIPULATION AND ORDER AMONG
DEBTORS, PENSION BENEFIT GUARANTY CORPORATION AND
THE MASTER PENSION PLAN OF CONE MILLS CORPORATION**

Upon consideration of the motion (the "Motion")[1] of Cone Mills Corporation, the

above-captioned debtors and debtors-in-possession (each a "Debtor," and collectively, the

"Debtors"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy

Code"), for entry of an order approving the Stipulation and Order among the Debtors, the

Pension Benefit Guaranty Corporation and the Master Pension Plan of Cone Mills Corporation

(the "Stipulation"); and it appearing that the Court has jurisdiction to consider the Motion

pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the relief requested in

the Motion is in the best interests of the Debtors, their estates and creditors; and it appearing that

due and adequate notice and disclosure of the Motion has been given; and after due deliberation

and sufficient cause appearing therefor; it is

ORDERED that the Motion is granted; and it is further

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

ORDERED that the Stipulation annexed hereto as Exhibit A is hereby approved,

pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 105(a); and it is further

ORDERED that this Court shall retain jurisdiction over any and all matters arising

from or related to the interpretation or implementation of this Order.

Dated: Wilmington, Delaware
        September __, 2004

_____
Mary F. Walrath
Chief United States Bankruptcy Judge

Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03-12944 (MFW) |
| | ) | |
| Debtors | ) | (Jointly Administered) |
| | ) | |

**STIPULATION AND ORDER (i) REDUCING,
RECLASSIFYING AND ALLOWING THE PBGC'S PREPETITION
CLAIMS, AND (ii) DISMISSING THIS ADVERSARY PROCEEDING**

This Stipulation is entered into this 2nd day of September 2004 by and

among counsel to the above-captioned debtors and debtors in possession (each a

"Debtor," and collectively, the "Debtors"), the Pension Benefit Guaranty Corporation

(the "PBGC") and the Master Pension Plan of Cone Mills Corporation (the "Pension

Plan").

      A.      On September 24, 2003, the Debtors filed voluntary petitions for

relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware

(the "Court").

      B.      The Debtors continue in possession of their property pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

      C.      On January 28, 2004, the PBGC filed three separate proofs of

claim against each of the four Debtors (collectively, the "PBGC Claims"). The three

types of claims asserted against each Debtor are for (a) unliquidated amounts allegedly

owed for the PBGC's insurance premiums, interest and penalties (the "Premium

Claims"); (b) alleged unfunded benefit liabilities for the Pension Plan in the amount of $58,700,000 (the "Unfunded Benefit Liability Claims"); and (c) contributions owed to the Pension Plan (the "Contribution Claims"). The PBGC has asserted administrative and priority status for portions of the foregoing claims (the "Priority Claims").

D.    On March 23, 2004, the PBGC filed a complaint in the Middle District of North Carolina (Case 1:04 CV 258) (the "North Carolina Proceeding") seeking an order from such Court: (a) terminating the Pension Plan; (b) appointing the PBGC as statutory trustee of the Pension Plan; and (c) establishing January 29, 2004 as the termination date of the Pension Plan. The North Carolina Proceeding is currently pending.

E.    On May 19, 2004, the PBGC filed two separate Requests for Allowance and Payment of Administrative Expenses Claims against Cone Mills (collectively, the "PBGC Requests").

F.    On May 25, 2004, the Debtors filed a complaint initiating the adversary proceeding of Cone Mills Corporation v. Pension Benefit Guaranty Corporation and Master Pension Plan of Cone Mills Corporation (Adv. Pro. No. 04-53729 (MFW)) (the "Complaint"), in which the Debtors (a) objected to the PBGC Claims (the "Objection") and (b) asserted counterclaims against the PBGC and the Pension Plan to (i) avoid transfers of property based on preferential transfers and fraudulent conveyances and (ii) equitably subordinate the PBGC Claims (the "Avoidance Action").

G.    On June 4, 2004, the Debtors filed a motion (the "Rejection Motion") seeking entry of an order authorizing the Debtors, among other things, to reject that certain agreement, dated as of April 17, 2000, between the Debtors and the PBGC

(the "PBGC Agreement"). The PBGC Agreement provided for the Debtors to make "Additional Contributions." These "Additional Contributions" equal 20% of the Pension Plan's "unfunded benefit liabilities" within the meaning of 29 U.S.C. § 1301(a)(18), and were to be paid into a "Trust Fund" under the Pension Plan.

H.      On June 22, 2004, the Court approved the Debtors' Rejection Motion and the Debtors' rejection of the PBGC Agreement was effective as of June 30, 2004.

I.      On June 22, 2004, this Court entered a Stipulation and Order extending the deadline for filing an answer to the Complaint through and including July 30, 2004.

J.      On July 19, 2004, this Court entered a second stipulation and order extending the deadline for filing an answer to the Complaint through and including August 30, 2004. Since then, the parties have been engaged in settlement discussions, which have resulted in the settlement (the "Settlement") contained in this Stipulation.

K.      On July 29, 2004, the PBGC filed a claim in the amount of $58.7 million (the "PBGC Rejection Damages Claim") for alleged damages resulting from the Debtors' rejection of the PBGC Agreement.

L.      On August 20, 2004, the Debtors filed their First Amended Disclosure Statement Accompanying Second Amended Chapter 11 Plan of Liquidation and their Second Amended Chapter 11 Plan of Liquidation (the "Plan"). The hearing on confirmation of the Plan is scheduled for October 18, 2004.

M.    On August 27, 2004, this Court entered a third stipulation and order extending the deadline for filing an answer to the Complaint through and including September 30, 2004.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Debtors, the PBGC and the Pension Plan as follows:

1.    All of the PBGC's claims against the Debtors' estates, including, without limitation, the PBGC Claims, the PBGC Requests and the PBGC Rejection Damages Claim and the portions of those claims asserted on behalf of the Pension Plan, shall be reduced and allowed as a single general unsecured non-priority claim against the Debtors in the amount of $58.7 million (the "Allowed PBGC General Unsecured Claim").

2.    Subject to the occurrence of the Stipulation Effective Date (as defined below), the PBGC shall (a) not object to the Plan or any subsequent plan which provides substantially similar non-economic treatment and the same or better recoveries and distributions and payment terms as under the current Plan ("Economic Treatment") with respect to the Allowed PBGC General Unsecured Claim and (b) not vote against the Plan or any subsequent plan which provides substantially similar non-economic treatment and the same or better Economic Treatment with respect to the Allowed PBGC General Unsecured Claim; provided, however, the foregoing shall not adversely affect, prejudice, limit, restrict, impair, waive or estop the rights, claims or causes of action of the PBGC or the Pension Plan against any person or entity other than the Debtors (the "Non-Debtors") in any forum, including but not limited to rights, claims, or causes of action against such Non-Debtors with respect to any asset valuation,

allocation of proceeds, or dividends or distributions made to the Debtors by their non-debtor subsidiaries.

3.   On the Stipulation Effective Date, the adversary proceeding commenced by the filing of the Complaint shall be dismissed with prejudice.

4.   On the Stipulation Effective Date, the Debtors and the PBGC shall enter into the Trusteeship Agreement,[1] pursuant to which the Debtors and the PBGC agree (a) to terminate the Pension Plan as of January 29, 2004 and (b) to the appointment of the PBGC as trustee of the Pension Plan. Promptly after the Stipulation Effective Date, the PBGC shall dismiss the North Carolina Proceeding.

5.      On the Stipulation Effective Date, the PBGC shall withdraw with prejudice its joinder to the Ad Hoc Bondholder Committee's Motion on Remand from the District Court for Relief from the Sale Order because of New Evidence filed on July 6, 2004; provided, however, the foregoing shall not adversely affect, prejudice, limit, restrict, impair, waive or estop the rights, claims or causes of action of the PBGC or the Pension Plan against any of the Non-Debtors in any forum, including but not limited to rights, claims, or causes of action against such Non-Debtors with respect to any asset valuation, allocation of proceeds, or dividends or distributions made to the Debtors by their non-debtor subsidiaries.

6.   Except as provided herein, on the Stipulation Effective Date, the PBGC, the Debtors and the Pension Plan hereby forever release and discharge each other from any and all claims, causes of action (including those held derivatively),

---

[1]    The Trusteeship Agreement is attached hereto as Exhibit A.

liabilities, obligations, suits, debts, sums of money, damages, demands or judgments arising out of or in connection with or in any way relating to the Pension Plan or the Debtors' bankruptcy cases.

7.  PBGC and the Pension Plan agree to limit their claim against the Debtors' estates to the Allowed PBGC General Unsecured Claim, notwithstanding any judgment or award they may obtain against any other person or entity.  The PBGC further agrees that it will not file a claim, demand or cause of action in any forum which expressly requests as a remedy to it or that specifically seeks to compel another party to seek a remedy that any dividends or distributions made to the Debtors by their non-debtor subsidiaries in connection with the sale of the assets of such subsidiaries be returned by the Debtors to such subsidiaries; provided that, except as expressly set forth above, the foregoing, including but not limited to the PBGC's agreement not to seek a specific remedy available to it will not in any way adversely affect, prejudice, limit, restrict, impair, waive or estop the PBGC's rights, claims, or causes of action against the Non-Debtors, including but not limited to rights, claims, or causes of action against such Non-Debtors with respect to any asset valuation, allocation of proceeds, or dividends or distributions made to the Debtors by their non-debtor subsidiaries.

8.  Nothing contained herein shall release any person or entity other than the parties to this Stipulation from any claims, causes of action (including those held derivatively), liabilities, obligations, suits, debts, sums of money, damages, demands or judgments.  Without limiting the foregoing, nothing contained herein shall impair any claim of PBGC or the Pension Plan against W.L. Ross & Co., any entity affiliated with W.L. Ross & Co., or any entity owned in whole or in part by Wilbur

Ross. No order of the Court, or provision of the Plan or any subsequent plan, or of any order confirming the Plan or any subsequent plan, and no finding of the Court in connection with any Plan or subsequent plan, shall adversely affect, prejudice, limit, restrict, impair, waive or estop the rights, claims or causes of action of PBGC or the Pension Plan against any Non-Debtors, including but not limited to rights against such Non-Debtors with respect to any asset valuation or allocation of proceeds from the sale of assets.

9.    The effectiveness of this Stipulation is conditioned on the Court entering an order approving the Stipulation on or before September 20, 2004, and having become final on or before October 1, 2004.

10. This Stipulation may not be amended or modified except by subsequent agreement in writing signed by all of the parties.

11. This Stipulation shall constitute the entire agreement between the parties with respect to the subject matter hereof and shall supersede any previous negotiations, commitments and writing with respect to such subject matter.

12. The Stipulation shall be governed by and construed in accordance with applicable federal law.

13. Nothing contained or provided for herein shall be deemed to constitute a waiver or admission by any party with respect to any rights, claims, defenses, or objections if the Court does not enter an order approving this Stipulation or such order does not become final and non-appealable (the date that such order becomes final and non-appealable, the "Stipulation Effective Date"). No party may use or refer

to this Stipulation or related motion papers filed with the Court if such order does not become final and non-appealable.

14. This Stipulation shall be binding upon all successors and assigns of the parties hereto, including but not limited to, any subsequently appointed Chapter 11 or Chapter 7 trustee of any of the Debtors.

15. This Stipulation may be executed in one or more counterparts, all of which shall be considered one and the same document, and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, it being understood that all parties need not sign the same counterpart.

16. Each party hereto represents (with respect to the Debtors, upon approval by the Bankruptcy Court of this Stipulation) that (x) this Stipulation (i) has been duly and validly authorized, executed and delivered by such party, and (ii) is the legal, valid and binding obligation of such party and (y) it has full power and authority to perform its obligations hereunder.

Dated: Wilmington, Delaware
      September __, 2004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Pauline K. Morgan*

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for the Debtors and Debtors in Possession


PENSION BENEFIT GUARANTY CORPORATION

*Kartar S Khalsa*

Kartar S. Khalsa
1200 K Street N.W., Suite 340
Washington, DC 20005-4026
Telephone: (202) 326-4020 x6350
Facsimile: (202) 326-4112

Counsel for the Pension Benefit Guaranty Corporation

9

CONE MILLS CORPORATION PENSION TRUST,
By its Directed Trustee, STATE STREET BANK AND
TRUST COMPANY

David Stratton (Bar No. 960)
PEPPER HAMILTON LLP
1201 Market Street
Wilmington, Delaware  19899
Telephone:  (302) 777-6500

- and –

Stephen Z. Starr, Esq.
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York  10022
Telephone:  (212) 318-6000

# Exhibit A

## AGREEMENT FOR APPOINTMENT OF
## TRUSTEE AND TERMINATION OF PLAN

THIS AGREEMENT is made as of the last date listed below by and between the Pension

Benefit Guaranty Corporation ("PBGC") and Cone Mills Corporation (the "Company")

## WITNESSETH:

1.    PBGC is a wholly-owned United States Government corporation created under

Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C

§§ 1301-1461 (2000 & Supp. I 2001) ("ERISA").

2.    The Company is a corporation organized under the laws of North Carolina with

its principal place of business located in Greensboro, North Carolina.

3.    The Company established the Master Pension Plan of Cone Mills Corporation

(the "Plan") to provide retirement benefits for certain of its employees.

4.    On January 29, 2004, the Company was a contributing sponsor of the Plan for

purposes of ERISA. 29 U.S.C. § 1301(a)(13).

5.    The Plan is an employee pension benefit plan to which 29 U.S.C. § 1321(a)

applies and is not exempt under 29 U.S.C. § 1321(b). The Plan is therefore subject to Title IV of

ERISA.

6.    The Company is the administrator of the Plan within the meaning of 29 U.S.C

§§ 1002(16) and 1301(a)(1).

7.    The Company filed for reorganization under Chapter 11 of the Bankruptcy Code

on September 24, 2003.

8.    On January 26, 2004, the PBGC issued a Notice of Determination, pursuant to

29 U.S.C § 1342(a)(2), (4), that the Plan will be unable to pay benefits when due, that the

possible long-run loss of the PBGC with respect to the Plan may reasonably be expected to

increase unreasonably if the Plan is not terminated, and that pursuant to 29 U.S.C. § 1342(c), termination of the Plan effective January 29, 2004, is necessary in order to protect the interests of the Plan's participants and to avoid an unreasonable increase in the liability of the PBGC.

NOW THEREFORE, the parties agree:

1. Pursuant to 29 U.S.C. § 1342(c), the Plan is hereby terminated.

2. Pursuant to 29 U S C § 1348, the date of Plan termination is January 29, 2004.

3. Pursuant to 29 U.S.C. § 1342(c), PBGC is hereby appointed trustee of the Plan

4. The Company and any other person having possession, custody or control of any records, assets or other property of the Plan shall transfer, convey and deliver to PBGC such records, assets or property

5. PBGC will have, with respect to the Plan, all of the rights and powers of a trustee specified in ERISA or otherwise granted by law

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals or caused this document to be executed by the duly authorized persons on the date appearing opposite their names.

### PENSION BENEFIT GUARANTY CORPORATION

Dated:_____    By _____
                     Name:_____
                     Title:_____

### CONE MILLS CORPORATION

Dated _____    By:_____
                     Name: _____
                     Title:_____

2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.*, | ) | Case No. 03-12944 (MFW) |
| | ) | |
| Debtors | ) | (Jointly Administered) |
| | ) | |

| | | |
|---|---|---|
| CONE MILLS CORPORATION, | ) | |
| Plaintiff, | ) | Adversary Pro. No. 04-53729 (MFW) |
| vs. | ) | |
| PENSION BENEFIT GUARANTY CORPORATION AND MASTER PENSION PLAN OF CONE MILLS CORPORATION, | ) | |
| Defendants. | ) | |

**ORDER DISMISSING**
**ADVERSARY PROCEEDING NUMBER 04-53729 (MFW)**

Upon consideration of the motion (the "Motion")[1] of Cone Mills

Corporation, the above-captioned debtors and debtors-in-possession (each a "Debtor,"

and collectively, the "Debtors"), pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the

United States Code (the "Bankruptcy Code"), for entry of an order approving the

Stipulation and Order among the Debtors, the Pension Benefit Guaranty Corporation and

the Master Pension Plan of Cone Mills Corporation (the "Stipulation") and dismissing

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

adversary proceeding number 04-53729 (MFW); and it appearing that the Court has

jurisdiction to consider the Motion pursuant to 28 U.S.C. § 157(b)(2); and the Court

having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates and creditors; and it appearing that due and adequate notice and

disclosure of the Motion has been given; and after due deliberation and sufficient cause

appearing therefor; it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that Adversary Proceeding Number 04-53729 (MFW) is

hereby dismissed with prejudice; and it is further

      ORDERED that this Court shall retain jurisdiction over any and all

matters arising from or related to the interpretation or implementation of this Order.

Dated: Wilmington, Delaware
      September __, 2004

 

                      _____

                      Mary F. Walrath
                      Chief United States Bankruptcy Judge