**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **CONE MILLS CORPORATION,** *et al.* | ) | **Case Nos. 03-12944 (MFW)** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | **Re: Docket No. 998** |
| | ) | |
| | ) | **Objection Deadline: November 11, 2004** |
| _____ ) | | **Hearing Date: November 18, 2004** |

**OBJECTION OF PENSION BENEFIT GUARANTY
CORPORATION TO MOTION OF WLR RECOVERY FUND II LP
AND WLR CONE MILLS ACQUISITION LLC FOR (1) ORDER ENFORCING
SALE ORDER INJUNCTION AGAINST THE DEBTORS AND THE PENSION
BENEFIT GUARANTY CORPORATION, OR ALTERNATIVELY (2) FOR
ALLOWANCE OF AN ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §§
105(a), 363 AND 503(a) OR (3) FOR RESCISSION OF THE SALE [DOCKET NO. 998]**

The Pension Benefit Guaranty Corporation ("PBGC") responds to the Motion (the

"Injunction Motion") of WLR Recovery Fund II LP and WLR Cone Mills Acquisition LLC

(collectively, "WL Ross" or "Ross") for (1) Order Enforcing Sale Order Injunction against the

Debtors and PBGC, or alternatively (2) for Allowance of an Administrative Claim pursuant to 11

U.S.C. §§ 105(a), 363 and 503(a) or (3) for Rescission of the Sale, and states as follows:

**PRELIMINARY STATEMENT**

Contrary to WL Ross's assertions, PBGC is not trying to effect "an end-run around this

Court's Sale Order." Injunction Motion ¶ 17. The Sale Order approved the sale of the Debtors'

assets, which included, *inter alia*, the *stock* of the Debtors' Non-Debtor subsidiaries – both

domestic and foreign (the "Non-Debtors"). The subject of the pending action against the Ross

entities in North Carolina (the "North Carolina Action") is the transfer of the *assets* of the Non-

Debtors. The Sale Order did not approve the sale of these assets, either explicitly or implicitly,

nor could it have, because the Non-Debtor entities did not seek bankruptcy relief and were not

before this Court.  Consequently, this Court's Sale Order injunction does not prohibit PBGC

from prosecuting the North Carolina Action.

## BACKGROUND

1.      PBGC is a wholly-owned United States government corporation, and an agency

of the United States, that administers the defined benefit pension plan termination insurance

program under Title IV of the Employee Retirement Income Security Act of 1974, as amended,

29 U.S.C. § 1301 *et seq.* (2000 & Supp. I 2001) ("ERISA").  PBGC guarantees the payment of

certain pension benefits upon the termination of a single-employer pension plan covered by Title

IV of ERISA.  When an underfunded plan terminates, PBGC generally becomes trustee of the

plan and, subject to certain statutory limitations, pays the plan's unfunded benefits with its

insurance funds.  *See* 29 U.S.C. §§ 1321-1322, 1342, 1361.

2.      On September 24, 2003, Cone Mills Corporation ("Cone Mills") and three

subsidiaries (collectively with Cone Mills, the "Debtors") filed for Chapter 11 bankruptcy

protection in this Court.

**Termination of the Pension Plan**

3.      Cone Mills was the contributing sponsor, as defined in 29 U.S.C. § 1301(a)(13),

of the Master Pension Plan of Cone Mills Corporation (the "Pension Plan").  The Pension Plan is

a single-employer defined benefit pension plan covered by Title IV of ERISA pursuant to 29

U.S.C. § 1321.

4.      On January 26, 2004, PBGC issued to Cone Mills a Notice of Determination that

the Pension Plan must be terminated under 29 U.S.C. § 1342, effective January 29, 2004

("Notice of Determination").  Additionally, the Notice of Determination was published on

January 29, 2004, in the *News & Record* in Greensboro, North Carolina, the *Union Daily Times*

in Union, South Carolina, and the *Daily Courier* in Forest City, North Carolina.  WL Ross had notice and knowledge of the Notice of Determination.

5.      Pursuant to a Termination and Trusteeship Agreement executed by PBGC and Cone Mills, as plan administrator, the Pension Plan was terminated effective January 29, 2004, and PBGC was appointed statutory trustee.

6.      PBGC estimates that the Pension Plan has unfunded benefit liabilities, as that term is defined in 29 U.S.C. § 1301(a)(18), of approximately $58 million.

7.      As a result of the termination of the Pension Plan, PBGC is required, subject to certain statutory limitations, to pay the Pension Plan's unfunded benefits with its insurance funds pursuant to 29 U.S.C. §§ 1321-1322, 1361.  Pursuant to 29 U.S.C. § 1362, PBGC has a joint and several statutory claim against the contributing sponsor and each member of its "controlled group," as that term is defined in 29 U.S.C. § 1301(a)(14), on the termination date for the total amount of the Pension Plan's unfunded benefit liabilities and for the due and unpaid contributions to the Pension Plan required under ERISA's minimum funding standard.

8.      With the exception of CIPCO S.C., Inc., Cone Foreign Trading LLC, and Cornwallis Development Co., no member of Cone Mills' controlled group has filed a bankruptcy petition in this or any other court.

**The Sale**

9.      On October 10, 2003, Cone Mills filed with the Court a Motion for Entry of Order (A) Approving Sale Procedures; (B) Approving Buyer's Breakup Fee and Expense Reimbursement; (C) Approving Form and Manner of Notice; (D) Scheduling a Hearing to Consider the Sale of Substantially All of the Debtors' Assets; and (E) Granting Related Relief

(the "Procedures Motion").  The Procedures Motion appeared to seek the Court's approval of a sale of the assets of certain of the Non-Debtors, as well as those of the Debtors.

10.    PBGC filed a response to the Procedures Motion, explaining that, if the Pension Plan terminated, PBGC would have a joint and several statutory claim, pursuant to 29 U.S.C. § 1362, against each of the members of Cone Mills' controlled group, both Debtor and Non-Debtor entities, for the full amount of the Pension Plan's unfunded benefit liabilities.  PBGC asked that the bidding procedures be modified to identify and distinguish the respective values attributed to the assets of the Debtors and the Non-Debtors, and that the proceeds from the sale of the assets of the Non-Debtors be segregated and set aside for the benefit of the creditors of the Non-Debtors.

11.    At a hearing held on October 27, 2003, during the argument on the Procedures Motion, the Debtors acknowledged on the record that, "nothing in connection with the bidding procedures will have any effect on the rights of creditors of the [N]on-[D]ebtors with respect to the assets of the [N]on-[D]ebtors."  Transcript of Omnibus Bid Procedures, October 27, 2003 (Docket No. 233) at 26.  PBGC relied on this statement.

12.    On November 6, 2003, the Debtors and WLR Recovery Fund II L.P. and WLR Cone Mills Acquisition LLC entered into an Amended and Restated Asset Purchase Agreement (the "APA"), providing for the sale of the assets of the Debtors, including the stock in the Non-Debtors, to WLR Recovery Fund II L.P. and WLR Cone Mills Acquisition LLC.  The APA did not provide for a sale of the assets of any of the Non-Debtors.  In exchange for the assets of the Debtors, WLR Recovery Fund II L.P. and WLR Cone Mills Acquisition LLC agreed in the APA to pay the Debtors $45.3 million in cash and to assume $41.2 million of the Debtors' liabilities.

13.     On January 6, 2004, the Debtors filed a motion for authorization to sell substantially all of their assets (the "Sale Motion") to WLR Recovery Fund II L.P. and WLR Cone Mills Acquisition LLC, pursuant to the APA.  After a hearing on the Sale Motion on February 9 and 10, 2004 (the "Sale Hearing"), during which no testimony was presented regarding the sale of Non-Debtor assets, the Court granted the Sale Motion and entered an order (the "Sale Order") on February 10, 2004, authorizing the Debtors to close on the APA.  The Sale Motion and the Sale Order were both clear that the Debtors were selling only *their* assets, and not the assets of any of the Non-Debtor subsidiaries.  Consequently, PBGC did not object to the Sale Motion.

**Amendment of the APA and Closing of the Transaction**

14.     On March 12, 2004, the APA was amended to add, as "Additional Sellers" under the APA, certain of the Non-Debtors, and the transaction was closed.  *See* First Amendment of the Amended and Restated Asset Purchase Agreement (the "First Amended APA") dated as of March 12, 2004.  As a result of the amendment, the Additional Sellers, and possibly other Non-Debtors, transferred their assets to one or more of the purchasers at the closing.

15.     The amount the Debtors were paid by the purchasers remained the same as under the APA approved by the Court:  $45.3 million in cash and the assumption of $41.2 million of liabilities.  Thus, the purchasers paid no additional consideration for the assets of the Non-Debtors.

16.     The First Amended APA was neither served upon PBGC nor presented to the Court for its review or approval.

**The North Carolina Action and the Debtors' Settlement with PBGC**

17.     On September 14, 2004, PBGC filed a complaint in the Middle District of North Carolina against WL Ross and various affiliates of WL Ross (the "North Carolina Action") based on the Federal Debt Collection Procedure Act (the "FDCPA") and federal common law. PBGC's action was based on, *inter alia*, the transfer of the Non-Debtors' assets for no consideration.

18.     On September 16, 2004, the Court approved a settlement between PBGC and the Debtors regarding the Debtors' liability to PBGC, pursuant to 29 U.S.C. § 1362, for the Pension Plan's unfunded benefit liabilities.  The settlement specifically reserved PBGC's right to collect the liability under 29 U.S.C. § 1362 from the Non-Debtors. *See* Order Pursuant to Bankruptcy Rule 9019 Approving the Stipulation and Order Among Debtors, Pension Benefit Guaranty Corporation and the Master Pension Plan of Cone Mills Corporation (Docket No. 933), ¶¶ 7,8.

19.     On November 5, 2004, PBGC filed an amended complaint (the "Amended Complaint") in the North Carolina Action.  The Amended Complaint added additional defendants, including the Non-Debtor controlled group members, and additional counts based on 29 U.S.C. §§ 1362 and 1369.  A copy of the Amended Complaint is attached hereto as *Exhibit A*.

20.     PBGC seeks no relief from any of the Debtors in the North Carolina Action.

## ARGUMENT

**A.     The Injunction Provisions in the Sale Order Do Not Prohibit the North Carolina Action.**

**1.     The Sale Order and the APA Provided for the Sale of Only the *Debtors'* Assets.**

21.     Under the Sale Order, "[e]xcept as expressly permitted or otherwise specifically provided for in the APA or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy

Code, the *Assets* shall be transferred to the Buyer, upon consummation of the APA . . . ."  Sale

Order ¶ 8 (emphasis added).  Footnote 1 of the Sale Order provides, "Unless otherwise defined,

capitalized terms used herein shall have the meanings ascribed to them in the Motion or the

APA, as the case may be; as to any conflicts with respect to such terms, the meanings contained

in the APA shall control over the meanings contained in the Motion."  Sale Order at 1 n.1.  The

term "Assets" is defined only in the Sale Motion, to mean "the Debtors' assets," *i.e.*, the assets of

Cone Mills Corporation, CIPCO S.C., Inc., Cone Foreign Trading LLC, and Cornwallis

Development Co.  Nowhere in the Sale Order, the Sale Motion, or the APA is the term "Assets"

defined to include the assets of any of the Non-Debtors.

22.    While not defining the term "Assets," the APA does define the term "Purchased

Assets," as "all of the Sellers' right, title, and interest in and to all their Assets and Properties,

other than the Excluded Assets, as such Assets and Properties exist on the Closing Date,

including the following . . . ."  APA at § 11.01(a).  "Sellers" is defined in the preamble to the

APA as the Debtors, *i.e.*, Cone Mills Corporation, CIPCO S.C., Inc., Cone Foreign Trading LLC,

and Cornwallis Development Co.

23.    The APA governed the transfer of only the *Sellers*' interests and rights in the

assets listed on the Schedules to the APA; it did not apply to the interests and rights of the Non-

Debtors in their assets.  As WL Ross states:

> [T]he APA, which was presented to this Court in the Sale Motion on notice to the
> PBGC and other creditors, provided that at closing, the *Sellers* would transfer the
> "Purchased Assets" to the Buyer in exchange for the Purchase Price.  The
> definition of "Purchased Assets" in paragraph 11.01 of the APA included the
> Assets and Properties *of the Sellers* described in Schedule 1.01 of the Company's
> Disclosure Schedules, and included listed Real Property.

Injunction Motion ¶ 12 (emphasis added). Thus, under the APA and the Sale Motion, the transaction for which this Court's approval was sought was the transfer to WL Ross of the *Debtors'* right, title, and interest in the "Purchased Assets," *i.e.*, the *assets* of the *Debtors*.

24. WL Ross points out, however, that "Purchased Assets" included the assets identified on Disclosure Schedule 1.01 to the APA, and that Disclosure Schedule 1.01 referred to certain investments, including specifically assets of the Debtors' two Non-Debtor Mexican subsidiaries, Injunction Motion ¶¶ 13, 15, and implies that this reference somehow put PBGC and other parties on notice that the assets of the Mexican subsidiaries were part of the sale. As WL Ross admits, however, the Debtors had no right, title, or interest in those assets: "These Purchased Assets constitute the material assets of the two *non-debtor* Mexican affiliates of the Debtors, namely Cone Mills (Mexico) S.A. de C.V., and Cone Tamaulipas S. de R.L. de C.V. (collectively, the 'Mexican Affiliates')." Injunction Motion ¶ 13 (emphasis added). Consequently, the only "right, title, and interest" in these Non-Debtor assets that the Debtors could have transferred was the stock in the corporations that owned them, *i.e.*, the Mexican subsidiaries. Neither PBGC nor any other party would have had any reason to interpret these provisions otherwise. And indeed, WL Ross has admitted that the sale approved by the Court in the Sale Order included only the *stock* of the Non-Debtors. *See* Objection of WLR Recovery Fund II L.P. and WLR Cone Mills Acquisition LLC to Motion of Debtors, Pursuant to Bankruptcy Rule 9019, to Approve Stipulation and Order Among Debtors, Pension Benefit Guaranty Corporation and the Master Pension Plan of Cone Mills Corporation (the "9019 Objection") ¶ 4 ("The Asset Purchase Agreement had originally contemplated a sale of the stock of the these Mexican companies, but was modified by agreement of the parties to provide for the sale of the Mexican assets instead of stock.").

25.     Thus, this case is strikingly similar to another case recently decided by this Court, *Equity Broadcasting Corp. v. Shubert (In re Winstar Communications, Inc.)*, 284 B.R. 40 (Bankr. D. Del. 2002).  In *Winstar*, as here, a purchaser contended that the Court's order approving a sale of the assets of two debtor companies also included the assets of a non-debtor affiliate.  Making short shrift of that contention, this Court said:

> [The Debtor] cannot ignore [the non-debtor subsidiary's] corporate structure or the fact that it is *not* in a Bankruptcy proceeding.  [The Debtor] can exercise [its] rights as the sole shareholder, but [it] cannot deal with the assets of [the non-debtor subsidiary] as [it] wishes.  The corporate formalities must be observed.
>
>             . . . .
>
> [I]t is difficult to understand how someone with a law license would assert that ownership of all of the stock of a corporation would, without more, give the owner the right to deal in the assets of the corporation.

Id. at 51 & n. 11 (emphasis in original).

26.     Accordingly, the Debtors had the authority to transfer, and sought approval for the transfer of, only their stock in the Non-Debtor subsidiaries.  The APA did not contemplate, and the Sale Order did not authorize, the transfer of the assets of the Debtors' Non-Debtor subsidiaries.

**2.     Non-Debtors Were Added as "Additional Sellers" in the First Amended APA, Over a Month After the Sale Order Was Entered.**

27.     The Sale Order was entered on February 10, 2004, and on March 12, 2004, 31 days later, the parties entered into the First Amended APA.  The First Amended APA continued to define "Sellers" as the Debtors, but added "Additional Sellers" to the transaction, consisting of Cone Mills (Mexico) S.A. de C.V., Cone Tamaulipas S. de R.L. de C.V., and House 'N Home Fabrics & Draperies, Inc., each of which is a Non-Debtor.  However, the term "Additional Sellers" was not incorporated into the definition of "Sellers."  Consequently, all references to

"Sellers" in the APA, the First Amended APA, and the Sale Order refer only to the Debtors, and all references to "Additional Sellers" in those documents refer only to the Non-Debtors listed on Schedule A to the First Amended APA.

28.     The Debtors explained this change to the transaction in the First Amended Disclosure Statement Accompanying Second Amended Chapter 11 Plan of Liquidation (the "Amended Disclosure Statement"):

> [A]t the time of the Sale Hearing, the Debtors' sale of substantially all of their assets to WL Ross included both their domestic assets as well as the capital stock of certain non-debtor subsidiaries.  Subsequently, the Debtors and WL Ross agreed to modify the APA to provide for the transfer of the Debtors' second-tier non-debtor Mexican subsidiaries held by the Debtors' first-tier Mexican subsidiaries directly to WL Ross in lieu of the Debtors' transfer to WL Ross of their capital stock in the first-tier non-debtor Mexican subsidiaries.  Specifically, at the Closing, Cone Mexico transferred its 50% interest in Parras Cone to WL Ross.  In addition, Cone Tamalipas (together with Cone Mexico, the "Mexican Subsidiaries") transferred to WL Ross its 50% ownership interest in a partially developed industrial park in Altamira, Mexico as well as the proceeds of certain undeveloped land in Altamira, Mexico.

Amended Disclosure Statement § V.I.5(c).

29.     Thus, it is both undisputed and undisputable that the transaction approved by the Court in the Sale Order of February 10, 2004, included only the assets of the Debtors.

**3.    The Injunction Provisions in the Sale Order Apply Only to the Transfer of the *Debtors'* Assets to WL Ross.**

30.     Despite the fact that the Sale Order clearly did not apply to the assets of any Non-Debtors, WL Ross insists that its injunction provisions somehow extend to those assets.  This argument, however, is meritless.

31.     To be sure, the Sale Order provides WL Ross with numerous protections concerning its acquisition of the *Assets*.  But it provides no protections whatsoever with respect to Ross's acquisition of the assets of the Debtors' Non-Debtor subsidiaries.  The assets of the

Non-Debtors – the subject of the North Carolina Action – are assets with respect to which both the Injunction Motion and the Sale Order are deafeningly silent.

32.     Arguing otherwise, WL Ross cites the following provisions of the Sale Order:

> [All persons and entities] holding Interests of any kind or nature whatsoever against or in the *Debtors or the Assets* . . . arising under or out of, in connection with, or in any way relating to, the *Debtors*, the *Assets*, the operation of the *Debtors'* business prior to the Closing, or the transfer of the *Assets* to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the *Assets*, such persons' or entities' Interests.

*See* Injunction Motion ¶ 6 (quoting Sale Order ¶ 9) (emphasis added).

> [T]he transfer of the *Assets* to the Buyer will be a legal, valid, enforceable, and effective transfer of the *Assets*, and will vest the Buyer with all right, title, and interest of the *Debtors* in the *Assets* free and clear of all liens, claims, encumbrances and interests . . . .

*See* Injunction Motion ¶ 4 (quoting Sale Order ¶ O) (emphasis added).

> Except as expressly permitted or otherwise specifically provided for in the APA or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the *Assets* shall be transferred to the Buyer, upon consummation of the APA . . . .

*See* Injunction Motion ¶ 6 (quoting Sale Order ¶ 8) (emphasis added).

> Following the Closing, no holder of an Interest in the *Debtors* or the *Assets* shall interfere with the Buyer's title to or use and enjoyment of the *Assets* based on or related to such Interest, or any actions that the *Debtors* may take in their chapter 11 cases.

*See* Injunction Motion ¶ 8 (quoting Sale Order ¶ 32) (emphasis added).

> This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto . . . including, but not limited to, retaining jurisdiction to . . . protect the Buyer against . . . any Interests in the *Debtors* or the *Assets*, of any kind or nature whatsoever.

*See* Injunction Motion ¶ 9 (quoting Sale Order ¶ 33) (emphasis added).

33.     Additionally, although not cited by WL Ross, Paragraph 10 of the Sale Order provides:

> The transfer of the *Assets* to the Buyer pursuant to the APA shall constitute a legal, valid, and effective transfer of the *Assets*, and shall vest the Buyer with all right, title, and interest of the *Debtors* in and to the *Assets* free and clear of all Interests of any kind or nature whatsoever.

Sale Order ¶ 10 (emphasis added).

34.     Significantly, as the added emphasis makes clear, each and every one of these provisions refers explicitly and unequivocally to the "Assets" – a defined term that refers solely to the assets of the Debtors, and not the Non-Debtor subsidiaries.  As Ross aptly notes:

> The "free and clear" language of the Sale Order was not mere boilerplate.  It was language carefully crafted and specifically approved by the Court following a two-day hearing on objections by certain creditors to the sale of the Purchased Assets free and clear of all Interests; the Sale Order resolved those objections and reflects the clear intent of the parties and the Court.

Injunction Motion ¶ 5.  PBGC agrees.  This "carefully crafted" language provided WL Ross protection only for its purchase of the *Assets* of the *Debtors*, as set forth in the APA, and not with respect to its purchase of Non-Debtor assets, which was set forth for the first time over a month later in the First Amended APA.  WL Ross's request that PBGC be enjoined from pursuing the North Carolina Action should, therefore, be denied.

**4.     The Sale Order's Injunction Provisions Do Not Apply to the North Carolina Action in any Event.**

35.     Even if the language of the Sale Order could somehow be stretched to cover the transfer of Non-Debtor assets – a transfer that did not become a part of the sale until more than a month after the Sale Order was entered – WL Ross's request should nevertheless be denied because the injunction provisions by their terms do not apply to PBGC's prosecution of the North Carolina Action.

36.     In the Injunction Motion, WL Ross seeks relief under Paragraph 9 of the Sale Order:

> *Except as expressly permitted* or otherwise specifically provided by the APA or
> *this Order*, all persons and entities, including, but not limited to, all debt security
> holders, equity security holders, governmental, tax, and regulatory authorities,
> parties to executory contracts, customers, lenders, trade and other creditors,
> holding Interests of any kind or nature whatsoever against or in the *Debtors* or the
> *Assets* (whether legal or equitable, secured or unsecured, matured or unmatured,
> contingent or non-contingent, senior or subordinated), arising under or out of, in
> connection with, or in any way relating to, the *Debtors*, the *Assets*, the operation
> of the *Debtors'* business prior to the Closing, or the transfer of the *Assets* to the
> Buyer, hereby are forever barred, estopped, and permanently enjoined from
> asserting against the Buyer, its successors or assigns, its property, or the *Assets*,
> such persons' or entities' Interests.

Sale Order ¶ 9 (emphasis added).  This provision enjoins actions brought in connection with the

Debtors or the Assets.  But the North Carolina Action seeks no relief with the regard to the

Debtors or their Assets – it seeks relief only with regard to the assets of the Non-Debtors.  Thus,

by its terms, the provision is inapplicable to the North Carolina Action.

      37.    Moreover, Paragraph 26 of the Sale Order provides, "Nothing in this Order or the

APA releases, nullifies, or enjoins any liability to a governmental unit under police and

regulatory statutes or regulations that any entity would become subject to as the new owner or

operator of property after the date of entry of this Order."  Sale Order ¶ 26.  Because PBGC is a

governmental unit and the liability it is seeking in the North Carolina Action arises under

regulatory statutes and regulations, the Sale Order's injunction provisions do not bar PBGC's

prosecution of the North Carolina Action.

      38.    Ross also cites Paragraph 27 of the Sale Order, which provides, in relevant part:

> Buyer shall have no liability with respect to any employee pension plan,
> employee welfare or retention, benefit and/or incentive plan to which any of the
> Debtors is a party . . . and all parties to any such agreement are hereby enjoined
> from asserting against Buyer any and all claims arising from or relating to such
> agreement."

This provision of the Sale Order enjoins all parties to "any employee pension plan, employee

welfare or retention, benefit and/or incentive plan to which any of the Debtors is a party."

PBGC, however, was not a party to any such agreement.  Accordingly, the injunction language in Paragraph 27 of the Sale Order is also inapplicable to PBGC and does not prohibit it from prosecuting the North Carolina Action.

**B.      The Transfer of Non-Debtor Assets Is Outside the Scope of the Bankruptcy Court's Jurisdiction.**

   **1.      Section 363(f) of the Bankruptcy Code Does Not Authorize the Transfer of Non-Debtor Assets Free and Clear of Interests.**

39.     Section 363(f) of the Bankruptcy Code authorizes a debtor to "sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate" if certain conditions are satisfied.  11 U.S.C. § 363(f).  Section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate*."  11 U.S.C. § 363(b)(1) (emphasis added). Accordingly, bankruptcy courts have the authority to authorize a sale of only a *debtor's* property free and clear of any interest.  Section 363 does not apply to the sale of the assets of a non-debtor.  *See*, *e.g.*, *Novacare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.)*, 267 B.R. 46, 59 (Bankr. D. Del. 2001) (citing *In re Signal Hill-Liberia Ave. Ltd. P'ship.*, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) ("[S]ales of property under § 363(f) are limited to sales of property of the estate.")); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[I]n order for assets to come within the auspices of § 363, they must be property of the estate").

40.     The Sale Order provides that "[t]he *Debtors* may sell the *Assets* free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied."  Sale Order ¶ Q

(emphasis added).[1]  Similarly, the First Amended APA, executed five weeks after the Sale Order

was entered, provides:

> Upon the terms and subject to the conditions contained herein and in the Sale
> Order, at the Closing (or, as the case may be, on the Subject Closing Date),
> Sellers and the Additional Sellers shall sell, assign, transfer and convey, or cause
> to be sold, assigned, transferred and conveyed, to Buyer, or its designees, as
> applicable, and Buyer, or its designees, as applicable, shall purchase and accept,
> all of Sellers' and the Additional Sellers' right, title and interest in and to the
> Purchased Assets for the Purchase Price free and clear of all Liens (other than the
> Permitted Liens) and, *in the case of the Sellers, in accordance with Section 363(f)
> of the Bankruptcy Code*.

First Amended APA § 1(a) (emphasis added).  The First Amended APA defined the term

"Sellers" as the Debtors.  Thus, both the Sale Order and the First Amended APA recognize that

the Bankruptcy Court's approval under Section 363 – and specifically, the protections afforded

by Section 363(f) – extended only to the transfer of the assets of the Debtors, and not to the

assets of the Non-Debtors.[2]

### 2.        Bankruptcy Courts Lack Jurisdiction over Non-Debtors.

41.        The jurisdiction of bankruptcy courts is limited to "civil proceedings arising under

title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1334(b).  "[T]he bankruptcy

statutes [however] do not give a bankruptcy court jurisdiction over property belonging to an

entity owned in whole or in part by the bankrupt without first finding that the property also

constitutes a part of the bankrupt's property."  *Center Ltd. P'ship v. Smith (In re Holywell

Corp.)*, 118 B.R. 876, 879 (S.D. Fla. 1990) (citing *Matter of Pentell*, 777 F.2d 1281 (7th Cir.

1985)).  "In general, and absent unusual circumstances, the property of a debtor's subsidiary is

---

[1] As explained in detail above, the term "Assets" unequivocally referred to only the assets of the Debtors.

[2] If the Court had authorized the transfer of the assets of the Non-Debtors in the manner asserted by WL Ross, it
would have been effectively approving a *de facto* substantive consolidation of the Debtors and the Non-Debtors,
without the very stringent proof required for such an extraordinary step.  *See, e.g.*, *Helena Chemical Co. v. Circle
Land & Cattle Corp. (In re Circle Land & Cattle Corp.)*, 213 B.R. 870, 876 (Bankr. D. Kan. 1997) ("[A] n equitable

not considered property of the debtor by virtue of the debtor's sole ownership of the subsidiary."
*Id.* (citing *In re South Jersey Land Corp.*, 361 F.2d 610 (3d Cir. 1966)).

42.      Therefore, the Sale Order's limitation to the Debtors' assets was not an accident;
rather, it was required.  The Non-Debtors have not sought bankruptcy relief, and accordingly,
their assets are not within the jurisdiction of this Court.  Indeed, the facts of this case are very
similar to those in *Winstar*, 284 B.R. 40.  In *Winstar*, two chapter 11 debtors, WCC and WNM,
and a non-debtor affiliate of the chapter 11 debtors, WBC, entered into a purchase agreement
with a third-party purchaser, EBC, agreeing to sell certain assets for one lump sum price.
Subsequent to the Court's approval of the sale, EBC brought an adversary proceeding to compel
the transfer of WBC's membership interests in various construction permits, claiming that
"'[p]ursuant to the Sale Order, Debtors and WBC were ordered to transfer' to EBC what it refers
to as the EBC Permits."  *Id*. at 49.

43.      This Court disagreed, holding that the Sale Order did not "order WBC to do
anything."  *Id.*  "While some phrases in the Motion for Approval might be construed as asking
the court to approve a sale by WBC [the non-debtor entity] or otherwise exercise jurisdiction
over WBC, taken as a whole, the Motion for Approval was only asking the court to approve the
actions of the two debtors, WNM and WCC."  *Id.* at 46.  The statutory predicates for the relief
granted in the sale order were sections 363(b), (f), and (m) of the Bankruptcy Code, and the
Court was, therefore, "considering this matter under statutes and rules governing the sale of
property by debtors in possession; namely WNM and WCC.  The Sale Order does not cite any
statute that would indicate the court was attempting to exercise jurisdiction over WBC."  *Id.* at
47.  To the contrary:

---

order of substantive consolidation of a non-debtor with a debtor is, in effect, taking jurisdiction over the non-debtor
corporation without express statutory authority.").

WBC has not filed for Bankruptcy relief and there is no indication of an involuntary Bankruptcy proceeding against it. Contrary to EBC's assertions, WBC did not consent to Bankruptcy court jurisdiction in connection with the Sale Order, and in the Sale Order, the District Court made no attempt to assert jurisdiction over WBC. Since WBC is not in Bankruptcy, the Trustee, as its sole shareholder, has no right to enter into transactions on behalf of WBC or to deal in its assets. *This court has no jurisdiction over WBC.*

*Id.* at 52 (emphasis added).

44.    The Court further rejected the notion that the debtor's ownership of WBC would afford the Court jurisdiction over the latter's assets:

If the court were to find that this action was under the jurisdiction of the Bankruptcy Court, the decision would have the result of bringing every wholly owned subsidiary into every Bankruptcy case regardless of the circumstances and without the safeguards afforded by schedules, statements of financial affairs, notices to creditors, or meetings of creditors. Further, such a decision could result in debtors and others abusing the system by withholding from Bankruptcy or bringing into Bankruptcy subsidiaries in a revolving door fashion. *Therefore, the court finds that the ownership of all of the outstanding stock of WBC by the Trustee does not confer jurisdiction on the Bankruptcy Court to decide disputes involving WBC's assets.*

*Id.* at 51 (emphasis added).

[T]he ownership of all of the outstanding stock of [a non-debtor subsidiary] by the [Debtor] does not confer jurisdiction on the Bankruptcy Court to decide disputes involving [the non-debtor subsidiary's] assets.

*Id.* The Court therefore dismissed EBC's complaint.

45.    The Non-Debtors in this case have similarly not sought bankruptcy relief, and this Court has made no attempt to assert jurisdiction over them. And the Debtors had no right to seek the Court's approval for a transaction entered into on their behalf. As in *Winstar*, the Court has no jurisdiction over the Debtor's Non-Debtor subsidiaries, and the injunctive provisions in the Sale Order could not, therefore, extend to their assets.

46.    Clearly, WL Ross has failed to heed the warning of the court in *In re Murchison*, 54 B.R. 721, 724 (Bankr. N.D. Tex. 1985), which stated:

> [T]he question becomes whether this, a court of limited jurisdiction, should extend itself beyond Congressionally defined parameters for no reason other than to accommodate [sic] and placate a purchaser of property, or a title company involved in the transaction, whose misperception of the effect and consequences of bankruptcy on a proposed sale produces an uncomfortable degree of anxiety and insecurity. *It should be noted by all counsel confronted with circumstances similar to those present here that this Court exists to adjudicate disputes arising in conjunction with the administration of an estate in bankruptcy between parties-in-interest and concerning property of the estate and claims against it. It is not the purpose of this Court to assuage the fears and calm the apprehensions of those who seek to sell or buy assets held by an entity which, albeit related to a debtor, is not itself in bankruptcy.*

*Id.* at 724 (emphasis added).

## C.    The Court Has Made No Finding With Respect to the Consideration Paid by WL Ross for the Non-Debtors' Assets.

47.    WL Ross asserts that "in agreement with all of their Creditor constituencies, [the Debtors] allocated $10 million of value to the *assets* of the Mexican affiliates for purposes of Plan distributions to secured and unsecured creditors, representing a fair allocation of value to those *assets*." Injunction Motion, ¶ 16 (emphasis added).  Thus, according to Ross, "The Debtors are holding the proceeds of the sale allocable to the *assets of the Mexican affiliates*, and this Court has presumptively found that the Buyer paid fair value *for all of the assets, including the stock and the assets of the subsidiaries*." *Id.* (emphasis added).  These assertions are demonstrably false.

48.    The terms of the APA and the Sale Order state only that the Purchase Price was paid for the Assets, defined as the assets of the Debtors.  Thus, in the Sale Order, the Court found:

> The consideration provided by the Buyer for the *Assets* pursuant to the APA (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the *Assets*, (iii) will provide a greater recovery for the *Debtors'* creditors than would be provided by any other practically available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the

laws of the United States, any state, territory, possession, and the District of
Columbia.

Sale Order ¶ M (emphasis added). Nothing in the APA or the Sale Order states that a portion of
the Purchase Price was for the assets of any of the Non-Debtors, nor was any such statement
made at the Sale Hearing. As even WL Ross recognizes, the Sale Order "among other things
specifically held that the Purchase Price for the *Assets* constituted reasonably equivalent value
and fair consideration under the Bankruptcy Code and the laws of the United States . . . ."
Injunction Motion ¶ 17 (emphasis added). Thus, the Court's sole finding was with regard to the
value and consideration paid for the *Debtors' assets*.

49.     Although the First Amended APA added the "Additional Sellers" to the
transaction, the amount the purchasers paid remained the same as under the APA approved by
the Court: $45.3 million in cash and the assumption of $41.2 million of liabilities. And nothing
in the First Amended APA purported to allocate that purchase price between the Sellers and the
Additional Sellers, *i.e.*, the Debtors and the Non-Debtors. Indeed, such an allocation would have
had a material adverse effect on the Debtors' estates, and, pursuant to the Sale Order, would have
required the Court's approval. *See* Sale Order ¶ 7 ("The APA . . . may be modified, amended or
supplemented by the parties thereto . . . provided that any such modification, amendment, or
supplement does not have a material adverse effect on the Debtors' estates."). No such approval
was ever requested or granted.

50.     WL Ross's argument is also inconsistent with the language of the Amended
Disclosure Statement. The rights of the unsecured creditors were limited to a portion of the
stock in the Mexican Subsidiaries not encumbered by any security interest. *See* Amended
Disclosure Statement § V.I.5(d) ("[T]he amounts outstanding under Cone Mills' Bank Facility,
the Senior Notes and the Indenture are secured by, among other collateral of the Debtors, only

65% of Cone Mills' *shareholdings* in its Mexican Subsidiaries. As a result, 35% of Cone Mills'

*shareholdings* in its Mexican Subsidiaries is unencumbered and the proceeds therefore will be

available for distribution to the Debtors' unsecured creditors.") (emphasis added). Therefore, the

Amended Disclosure Statement states:

> [T]he amount of the purchase price that was fairly allocable to the *Debtors'*
> *Mexican Subsidiaries* was equal to $10 million in the aggregate. Because 35% of
> that $10 million allocation remains unencumbered, $3.5 million of the Cash
> proceeds received by the Debtors under the APA is available under the Plan for
> distribution to the Debtors' unsecured creditors . . . .

Amended Disclosure Statement § V.I.5(d). Nowhere in this provision is the word "assets" used.

To the contrary, this provision explains that the constituencies had agreed that $10 million of the

purchase price was fairly allocable to the *Debtors' Mexican Subsidiaries*, *i.e.*, the *stock* in the

Mexican Subsidiaries. It says nothing whatsoever about the *assets* of those Mexican

Subsidiaries. Accordingly, if a portion of the purchase price was not allocated to the *stock*, the

Debtors' unsecured creditors would receive no distribution because the *stock* is the only

unencumbered asset of the estate.

51.     In short, the Court has made no finding that any amount of the purchase price paid

by WL Ross was allocable to the assets of the Non-Debtors. WL Ross's assertions to the

contrary are simply wrong.

## CONCLUSION

52.     The Sale Order authorized the transfer of the Debtors' *assets* to WL Ross free and

clear of any claims or interests, and it enjoined actions brought solely with regard to those *Asset*s.

The Sale Order is silent, however, with respect to a transfer of assets to WL Ross by any of the

Non-Debtors. There are two reasons for this silence. First, the Debtors did not request the Court

to authorize the transfer of any of the Non-Debtors' assets. The Debtors sought and received

approval solely for a transfer of their own assets, and it was not until March 12, 2004, more than a month after the entry of the Sale Order, that the assets of the Non-Debtors were made a part of the transaction. Second, the Court could not have authorized a transfer of the assets of the Non-Debtors, because the Non-Debtors are neither within the jurisdiction of this Court nor subject to Section 363 of the Bankruptcy Code. Consequently, the injunctive provisions in the Sale Order did not extend to the assets of the Non-Debtors, and PBGC is not precluded from pursuing its claims in the North Carolina Action.

[*Remainder of page intentionally left blank.*]

WHEREFORE, PBGC respectfully requests that this Court sustain its Objection, deny the Injunction Motion, and grant PBGC such other, further, or additional relief as the Court deems equitable and proper.

Dated:  November 11, 2004

Respectfully submitted,

PENSION BENEFIT GUARANTY CORPORATION

*/s/ Kartar S. Khalsa*
James J. Keightley
General Counsel
William G. Beyer
Deputy General Counsel
Stephen D. Schreiber
Assistant General Counsel
Kartar S. Khalsa
Margaret E. Drake
Attorneys
Office of the General Counsel
1200 K Street, N.W., Suite 340
Washington, D.C. 20005
Telephone: (202) 326-4020, ext. 6350

-and-

*/s/ Mary Joanne Dowd*
Carol Connor Flowe
Mary Joanne Dowd
David J. Witten
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Counsel for Pension Benefit Guaranty Corporation*