IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONE MILLS CORPORATION, *et al.* | ) | Case Nos. 03-12944 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: October 27, 2003 @ 3:00 p.m. |
| _____ | ) | Responses Due: October 20, 2003 @ 4:00 p.m. |

**THE PENSION BENEFIT GUARANTY CORPORATION'S
RESPONSE TO MOTION OF DEBTORS
FOR ENTRY OF ORDER (A) APPROVING SALE
PROCEDURES; (B) APPROVING BUYER'S BREAKUP FEE AND
EXPENSE REIMBURSEMENT; (C) APPROVING FORM AND MANNER
OF NOTICE; (D) SCHEDULING A HEARING TO CONSIDER THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS;
AND (E) GRANTING RELATED RELIEF**

The Pension Benefit Guaranty Corporation ("PBGC") hereby responds to the Motion of Debtors for Entry of Order (a) Approving Sale Procedures, (b) Approving Buyer's Breakup Fee and Expense Reimbursement, (c) Approving Form and Manner of Notice, (d) Scheduling a Hearing To Consider the Sale of Substantially All of the Debtors' Assets, and (e) Granting Related Relief ("Motion").

**BACKGROUND**

1.     PBGC is a wholly-owned United States government corporation, and an agency of the United States, that administers the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 (2000).  PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA.  When an underfunded plan terminates, PBGC generally becomes trustee of the plan and, subject to certain

statutory limitations, pays the plan's unfunded benefits with its insurance funds. *See* 29 U.S.C. §§ 1321-1322, 1342, 1361.

2. On September 24, 2003, Cone Mills Corporation ("Cone Mills") and three affiliates (collectively with Cone Mills, the "Debtors") filed for Chapter 11 bankruptcy protection in this Court.

3. Upon information and belief, Cone Mills holds, directly or indirectly, an ownership interest in approximately eleven business entities that have not filed for bankruptcy protection (collectively, the "Non-Debtors"). *See* e.g., Exhibit A, (Cone Mills 2002 10-K, Exhibit 21).

4. Cone Mills is the contributing sponsor of the Pension Plan of Cone Mills Corporation ("Pension Plan") within the meaning of 29 U.S.C. § 1301(a)(13). The Pension Plan is a single-employer defined benefit pension plan covered by Title IV of ERISA. *See* 29 U.S.C. § 1321.

5. PBGC estimates that the Pension Plan is underfunded in the amount of $22 million.

6. Under ERISA, the Debtors and the Non-Debtors are jointly and severally liable to the Pension Plan for the contributions required under ERISA's minimum funding standard and to PBGC for the Pension Plan's unfunded benefit liabilities. 26 U.S.C. § 412; 29 U.S.C. §§ 1802, 1362.

7. The Motion seeks this Court's approval of the bidding procedures with respect to the sale of substantially all assets of the Debtors and the Non-Debtors to WL Ross & Co. LLC ("Ross"). *See* Exhibit A to Motion, Letter Agreement p.1. The bidding procedures proposed in

the Motion do not distinguish among the assets of the Debtors and the assets of the Non-Debtors, or for allocating the proceeds of sale among the Debtors and the Non-Debtors.

8. The proposed auction and bid procedures do not address the Debtors' obligations under ERISA with respect to the Pension Plan or its participants.

## DISCUSSION

### A. THE PROPOSED BIDDING PROCEDURES SHOULD ADDRESS PENSION PLAN ISSUES.

The purchase offer by Ross does not include assumption of the Pension Plan. *See* Exhibit A to Motion, Letter Agreement p.4. Thus, termination of the Pension Plan is likely at some point in this proceeding.

Upon a termination of the Pension Plan, Cone Mills and each member of its controlled group, whether debtor or non-debtor, will be jointly and severally liable to PBGC for the underfunding of the Pension Plan. 29 U.S.C. § 1362. This liability will reduce the dividend received by creditors of each of the Debtors and the amount available to satisfy creditors of the Non-Debtors.

PBGC requests the following modifications to the proposed auction and bid procedures and order to better reflect the affect of pension liabilities on creditors' recoveries. First, a bidder should state whether it intends to hire any employees covered under the Pension Plan, and, if so, whether the bidder intends to assume pension liabilities and assets relating to those employees. Second, in determining the highest and best bid to be submitted for Court approval, the Debtors and all other parties will recognize the value of any assumed pension liabilities and the

corresponding reduction in claims against the Debtors and outstanding liability of the Non-Debtors.

      **B.    THE PROPOSED BIDDING PROCEDURES DO NOT PROTECT THE INTERESTS OF THE CREDITORS OF THE NON-DEBTORS.**

The Letter Agreement provides that Ross will purchase "substantially all the Debtors' assets". *See* Exhibit A to Motion, Letter Agreement, para. 1. It appears that this includes the assets of the Non-Debtors as well. *Id.*

The sale of assets of the Non-Debtors exceeds the scope of Bankruptcy Code section 363, which provides only for the sale of property of the estate. See e.g. In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("in order for assets to come within the auspices of § 363, they must be property of the estate"); Novacare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.), 267 B.R. 46, 59 (Bankr. D. Del. 2001) (citing In re Signal Hill-Liberia Ave. Ltd. P'ship., 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) ("[S]ales of property under § 363(f) are limited to sales of property of the estate.")). If such assets are included in the sale, diversion of the proceeds in order to fund the Debtors' reorganization may

violate Bankruptcy Code section 548[1] and applicable state law[2] relating to fraudulent transfer and the Non-Debtors' obligations to their creditors.

In light of the foregoing, if the assets of the Non-Debtors are included in the proposed sale, in order to provide for appropriate treatment of these assets and the protection of the Non-Debtors' creditors, the bidding procedures should be modified to clearly identify and distinguish the respective values attributed to the assets of the Debtors and Non-Debtors and the proceeds segregated and preserved for the creditors of the Non-Debtors, like the PBGC.  This also will permit any competing bids on the assets of the Debtors and Non-Debtors to be compared and evaluated on an even basis.

---

[1]  In the event of a subsequent bankruptcy of one of the Non-Debtors, diverting the proceeds of the sale of that entity's assets could be voidable if that entity was insolvent on the date of transfer or was left with unreasonably small capital.  See 11 U.S.C. § 548(a)(1).

[2]  See e.g.  North Carolina General Statutes §§ 39-23.4, which provides in relevant part::

> (a)A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> . . . .
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

## CONCLUSION

In light of the foregoing, PBGC asks that the auction and bid procedures set forth in the Motion and the proposed order be modified consistent with the above requests.

Dated: October 20, 2003

                         Respectfully submitted,

                         /s/ Kartar S. Khalsa
                         JAMES J. KEIGHTLEY
                         General Counsel
                         WILLIAM G. BEYER
                         Deputy General Counsel
                         STEPHEN D. SCHREIBER
                         Assistant General Counsel
                         KARTAR S. KHALSA (KK 5947)
                         Attorney

                         PENSION BENEFIT GUARANTY
                         CORPORATION
                         Office of the General Counsel
                         1200 K Street, N.W., Suite 340
                         Washington, D.C. 20005-4026
                         Telephone: (202) 326-4020, extension 6350
                         Facsimile: (202) 326-4112

# EXHIBIT A

EX-21 4 dex21.htm SUBSIDIARIES OF REGISTRANT

**Exhibit 21 - Subsidiaries**

## CONE MILLS CORPORATION AND SUBSIDIARIES

| Name | Address | State or Jurisdiction of Incorporation | Percentage of Voting Securities Owned |
|---|---|---|---|
| Cone Mills (Mexico), S.A. de C.V. | Mexico City | Mexico, D.F. | 100% |
| Distribuidora CMUSA S.A. de C.V. | Mexico City | Mexico, D.F. | 100 |
| Cone Mills (Europe) S.A. | Zavantem, Belgium | Brussels, Belgium | 100 |
| Cone Singapore, PTE., Ltd. | Singapore | Republic of Singapore | 100 |
| Cone Foreign Sales Corporation | Greensboro, NC | Barbados | 100 |
| Cone Mills International Corporation | Greensboro, NC | North Carolina | 100 |
| CIPCO, S.C., Inc. | Carlisle, SC | Delaware | 100 |
| Cornwallis Development Co. | Greensboro, NC | North Carolina | 100 |
| Cliffside Railroad Company | Cliffside, NC | North Carolina | 98 |
| House 'N Home Fabrics and Draperies, Inc. | New York, NY | New York | 100 |
| Cone Receivables, LLC | Greensboro, NC | Delaware | 100 |
| Cone Foreign Trading LLC | Greensboro, NC | North Carolina | 100 |
| IsKone Denim Pazarlama A.S. | Istanbul, Turkey | Turkey | 51 |
| Cone Tamaulipas S. de R.L. de C.V. | Mexico City | Mexico, D.F. | 100 |

CERTIFICATE OF SERVICE

I, Kartar S. Khalsa, hereby certify that copies of the Pension Benefit Guaranty Corporation's Response to the Motion of Debtors for Entry of Order (A) Approving Sale Procedures; (B) Approving Buyer's Breakup Fee and Expense Reimbursement; (C) Approving Form and Manner of Notice; (D) Scheduling a Hearing To Consider the Sale of Substantially All of the Debtors' Assets; and (E) Granting Related Relief have been sent on October 20, 2003, by electronic service to all those on the electronic service list and by overnight courier to the following:

> Young, Conaway Stargatt & Taylor, LLP
> Pauline K. Morgan
> Joseph M. Barry
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801

> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> Andrew N. Rosenberg
> Brian S. Hermann
> Erica G. Weinberger
> 1285 Avenue of the Americas
> New York, New York 10019-6064

      /s/ Kartar S. Khalsa
      KARTAR S. KHALSA